# CHARLESTON.

## Rowan & Co. v. Hull.

Submitted February 17, 1904—Decided March 15, 1904.

1. Agent—*Commission.*

   Mere commission or reward to be earned by an agent in executing the agency does not alone make the agency one coupled with an interest. (p. 337).

2. Principal and Agent.

   An agency, uncoupled with an interest, and not for a fixed time, may be revoked by the principal at will without liability for damages; and though it be for a fixed time, still it may be

revoked at will, but the principal will be liable to the agent for damages for wrongful revocation within such time. There is often a difference between a *power* to revoke and a *right* to revoke, as between principal and agent. (p. 338).

3.  AGENT.—*Contract.*
    A written propsition to employ one as agent to sell land, signed by the proposer, accepted by the agent, though not signed by him, makes a binding contract of agency between them, and is a bilateral mutual contract and enforceable against both. (p. 339).

4.  AGENT.—*Contract.*
    A promise of remuneration for services to be performed makes a valid consideration for a contract. If one employ another as agent for remuneration on performance, the contract is based on sufficient consideration, and is mutually binding. (p. 340).

5.  CONTRACT.
    Benefit to be derived by each party to a contract furnishes a sufficient consideration for it. (p. 340).

6.  INSTRUCTION—*Evidence—Court.*
    It is for the court to determine whether there is evidence to render an instruction relevant. An instruction cannot be given and its consideration by the jury made to depend upon whether the jury finds that there is, or is not, such evidence. (p. 341).

Error to Circuit Court, Monroe County.

Action by John L. Rowan & Co. against J. W. Hull. From a judgment of the circuit court affirming a judgment for plaintiffs on appeal from a justice, defendant brings error.

*Affirmed.*

JOHN OSBORNE and J. D. LOGAN, for plaintiff in error.

ROWAN & BOGGESS, R. E. L. CLARK, and J. A. MEADOWS, for defendants in error.

BRANNON, JUDGE:

In the circuit court of Monroe county, in an appeal from a justice, John L. Rowan & Co. recovered against J. W. Hull, a verdict and judgment for $137.50, and from this judgment Hull has brought a writ of error. The claim of Rowan & Co. is, that Hull engaged them to sell for him a tract of land, and they

undertook the service, and made effort to sell to several persons; that they interested John C. Ballard in the lands, and sent him to see it, but Hull informed Ballard that he had concluded not to sell, and had revoked the power of Rowan & Co. to sell. Ballard then went to Rowan & Co., and they exhibited to him the written memorandum empowering them to sell, and convinced him that they still had power to sell under it, notwithstanding the revocation of their authority to sell, and then Ballard made a writing addressed to Rowan & Co. saying that he would give them $5,500, for the Hull farm.  Before Ballard went to see the land Hull wrote Rowan & Co. on the 12th of August, that he had concluded not to sell his farm.  The memorandum putting the land in the hands of Rowan & Co. for sale is as follows: "300 acres in Sweet Spring Dist. near Gap Mills; good dwelling, fine barn and other buildings; fine orchard, well watered with running water—well timbered—one of the nicest farms in Monroe.  Price, $5,500.  Terms easy.  5 per cent. to John L. Rowan & Co.  Land to be exclusively with them 3 months and until withdrawn.  This August 5th, 1902, J. W. Hull."

On 5th of January, 1903, Rowan & Co. sued Hull for compensation for their service under this agreement.

Hull contends that the paper given by him conferred on Rowan & Co. a naked power to sell uncoupled with an interest, and that it was revocable at any moment he might choose to revoke it, and that when he revoked it before sale Rowan & Co. could not recover the agreed commission, but only, at most, compensation for what they actually did, if any thing, under the power. Hull would reverse the judgment on the strength of his revocation of the authority of Rowan & Co. to sell.  The summons not being before us, and no pleading to show whether Rowan & Co. claimed 5 per cent. on $5,500, or merely actual compensation for trouble as agents, we cannot say, by the record, which character of claim was made; but we assume that it was for commission. What is the effect of the revocation before Rowan & Co. found a purchaser?  We have the question strictly as between those parties, not the rights of Ballard.  This power was naked, coupled with no interest, as the commission to be earned is not an interest rendering the power irrevocable.  1 Am. & Eng. Ency. L. (2 ed.) 1217; Mechen on Agency, section 207.  The same book, section 209 says: "Power to revoke—how distinguished from

the right to revoke. Where the authority is not coupled with an interest, the principal has power to revoke at his will at any time. But this *power* to revoke is not to be confounded with the *right* to revoke. Much uncertainty has crept into the text books and decisions from a failure to discriminate clearly between them. Except in those cases where the authority is coupled with an interest, the law compels no man to employ another against his will. The relation of agent to his principal is founded, in greater or less degree, upon trust and confidence. It is essentially a personal relation.   *   *   *   It is the rule of law that contracts of agency, like those creating other personal relations, will not be specifically enforced. Nor does it make any difference in this view, that the principal has expressly agreed that he will continue to confide in the agent for a definite period. It is no less difficult, on that account, to coerce compliance.   *   *   The law, therefore, leaves the principal in such cases to determine for himself how long the relation shall continue. This, then, is what it meant when it is said that the principal may revoke the authority at any time. But it by no means follows that, though possessing this *power* the principal has a *right* to exercise it without liability regardless of his contract in the matter. It is entirely consistent with the existence of the power that the principal may agree that for a definite period he will not exercise it, and for the violation of such agreement the principal is as much liable as for the breach of any contract. It is in this view, therefore, that the question of the *right* to revoke arises." Section 210. "When the right to revoke exists—when no express or implied agreement exists that the agent shall be retained for a definite time, the power and the right of revocation coincide—such employments are deemed to be at will merely, and may be terminated at any time by either party without violating contract obligations or incurring liability. The law presumes that all general employments are thus at will merely, and the burden of proving employment for a definite time rests upon him who alleges it." Also section 620. To like effect see Reinhard on Agency, section 159, 161; 1 Am. & Eng. Ency. L. 1216. Thus, Rowan & Co. had right of action for the breach of the contract in the revocation of their power within the period of three months. Authorities cited for Hull do not oppose this position, except *Simpson* v. *Carson,* 11 Oregon 361, a case not well rea-

soned. *Hunt* v. *Rousmanier*, 8 Wheaton 174, was a power coupled with an interest, a power to sell and pay the agent a debt, and it was held irrevocable in life or by death. By no means does it touch the proposition that where one empowers another for a given time, the power can be recalled sooner without liability. We do not deny that even if the power says it is exclusive or irrevocable it may be revoked, unless coupled with an interest or for a fixed term. Mechem on Agency, section 204. But here is a fixed term.

The right of action of Rowan & Co. thus being clear, what is the measure of recovery? Hull says that they have right to recover for what service they performed, but that the recovery is beyond that. Even on that basis we do not see that we can deny the finding of the jury. But that is not the test. "Where the parties have provided by their agreement what the agent's compensation shall be in case the principal sees fit to revoke the authority prematurely, such agreement will form the basis of the agent's recovery." Reinhard on Agency, section 269; Mechem on Agency, section 622. Under this principle the jury could have given Rowan & Co. $275, and so Hull has no right to complain of a less verdict. They could have realized that sum had not the agency been terminated. See *Ferrena* v. *Sayre*, 40 Am. Dec. 496.

But Hull says further that the memorandum is one-sided, imposing no duty or liability on Rowan & Co., and not binding them because they did not sign it. A writing was not necessary on their part to create an agency. If they accepted the agency that was enough. *Reynolds* v. *Tompkins* 23 W. Va. 229; Mechem on Agency, section 271. If a principal employ the agent for pay for executing the agency, it is enough. Reinhard on Agency, section 62. The oral evidence proves that they did accept the agency. That evidence does not contradict or vary, but supplements and applies the short memorandum and explains the contract as consistent with it. In deed, no oral evidence is for that necessary. Of course, oral evidence is permissible to show acceptance of the agency, as it is to show acceptance of a deed. Rowan & Co. went on to execute the agency by seeking purchasers under it, and this signifies acceptance. "This consent, of course, may be inferred from the acts of the agent. Thus, where he is found performing the agency, his acceptance

of it will be presumed." Mechem on Agency, sec. 108. Rowan & Co. accepted the memorandum. Offer on one side accepted by the other makes a mutual contract binding both. Bishop on Contracts, section 322. The consideration is valid in law; the promise on the one side to employ, the agreement on the other side to be employed signified by the delivery of the memorandum and its acceptance and prosecution of the agency under it. There were mutual and dependent promises on the one side to employ, on the other to serve. In the forms of declaration touching services we find them saying that in consideration that one agreed and undertook to employ, the other agreed and undertook to serve in a given capacity. These are mutual promises. It is surely not true that Rowan & Co. were bound to do nothing. When they accepted that memorandum of that employment, they became liable to the duties imposed upon them by law in such cases. For breach of their duty, for negligent loss of a sale, they would be liable. 3 Minor 329. There was benefit to be derived on each side from the contract, and that fills in the fullest the demand of the law as to consideration. *Sturn* v. *Parish,* 1 W. Va. 125. "Where mutual promises are made, the one furnishes sufficient consideration for the other." 9 Cyc. 323. Bilateral contracts furnish both the required consideration and mutuality. 6 Am. & Eng. Ency. L. (2 ed.) 727. This case is but an instance of the old basic rule of the law of contract that where an offer is made and accepted a contract has been made.

Hull says that plaintiff's instruction 3 is bad. It says that the consideration for a contract need not be money, but may be of an act to be performed, and if plaintiffs agreed to sell for remuneration that is sufficient consideration. This is sound. But it is said that it conflicts with defendants instruction first saying that when Hull put his land in to the hands of Rowan & Co. he could revoke at any time. Where is the conflict when one deals alone with consideration, the other with revocation? There is no inconsistency between instructions 3 and 4, the latter saying that if Rowan & Co. found a purchaser and consummation of sale was prevented by defendant, they could recover commission. They deal with different subjects.

Fault is found with plaintiff's instruction 5. After stating a proposition, the court stated to the jury that the instruction was

to be considered, if evidence had been given to sustain it, but if no such evidence had been given the jury must disregard it. It is very old law that an instruction should not be given without evidence bearing upon the facts on which it rests, and whether there is such evidence the court must say. Upon this view it would be error to give an instruction continually as in this case. Reversals are innumerable for the cause that there was no evidence to render an instruction a question before the jury. When the court gives an instruction, the jury must say that in the opinion of the court the subject of the instruction is a proper matter for the consideration of the jury under the evidence. Though error to give the instruction, it ought not to reverse the judgment. The instruction runs that if Rowan & Co. got Ballard to view the land with a view to buy, and Rowan & Co. did this before revocation and afterwards Ballard made an offer to buy at the price fixed in the memorandum, and did so in pursuance of the solicitation of Rowan & Co., then they were entitled to recover the commission stipulated in the contract. It was claimed on the one side and denied on the other that when Rowan was on the witness stand he stated that a few days after the engagement of Rowan & Co. as agents and before the 12th of August, the date of revocation of their authority, Rowan talked with Ballard and Mann about the land, and they agreed to examine it. The judge was sitting with his back to the witness and could not certify that the witness had so stated, and therefore left it to the jury to say whether he had so stated. Now, the date when Rowan talked with Ballard and Mann and requested them to examine the land is immaterial, so it was within three months. That evidence, the existence of which was left to the jury, was immaterial. That statement of the instruction was hurtful to the plaintiff and beneficial to the defendant. Eliminate it, and the instruction is sound law and pertinent to the case.

Our conclusion is to affirm the judgment.

*Affirmed.*