# CHARLESTON.

## ALEXANDER et al. v. SHERWOOD COMPANY.

Submitted February 28, 1911.   Decided March 18, 1913.

1. BROKERS—*Agency Coupled with Interest—Revocation.*

An agency, uncoupled with an interest, not for a definite time, may be revoked by the principal at will, without liability for damages. Commission or reward to be earned by an agent in executing the agency does not alone make the agency one coupled with an interest. (p. 198).

2. SAME—*Determination of Agency.*

An agent to sell lands at a price net to the owner, under a contract of agency specifying no time for performance, is entitled only to a fair and reasonable opportunity to effect the sale thereof. What is a fair and reasonable opportunity is to be determined from the facts and circumstances of each case. (p. 198).

Error to Circuit Court, Pocahontas County.

Action by John Alexander and others against the Sherwood Company. Judgment for defendant, and plaintiffs bring error.

*Affirmed.*

*Price, Osenton & Horan,* for plaintiffs in error.

*Wm. E. Chilton, F. R. Hill;* and *Willis & Homer,* for defendant in error.

LYNCH, JUDGE:

In and prior to 1904 McGraw, McClintic, the defendant, and others whose names do not appear, were owners of contiguous lands in Pocahontas county, aggregating approximately 15,000 acres. The plaintiffs were agents of McGraw and McClintic, authorized to sell their lands. Thomas J. Shryock and Geo. F. M. Hauck were directors, the latter being president, of the defendant. On May 17, 1906, Shryock wired Alexander that he would recommend that the defendant sell its land at the rate of ten dollars per acre net, one third cash, balance in one, two and three years, with interest, secured by mortgage on the land, reserving mineral rights, but saying nothing about commissions or time limit. Two months later, Alexander sold the entire boundary to Miller & Miller at fifteen dollars per acre cash,

and so advised Shryock, and requested a deed to him as trustee for defendant's part thereof, to be accompanied by a draft for the purchase money, at ten dollars per acre, and delivered as an escrow to the West End Trust Company of Philadelphia. The money necessary was to be raised by a sale of bonds secured by mortgage on the lands sold. Deeds were accordingly executed and delivered by all the owners, including the plaintiffs, who in the meantime had purchased and become the owners of the smaller tracts within the boundary and containing about three thousand acres. The sale to the Millers was not perfected, for reasons not assigned, nor is it material, as that deal was treated as abandoned.

Alexander testifies that immediately thereafter he and his co-plaintiff continued their efforts to obtain a purchaser, and again sold to the Wilsons at eleven dollars per acre. But at a meeting in Baltimore in October, 1907, all the owners being present, together with Shryock and Hauck representing defendant, the latter declined to confirm the sale, assigning as a reason therefor that the directors by resolution had withdrawn defendant's lands from the market. From the date of Millers' failure to complete their purchase to defendant's refusal to convey to the Wilsons, there had been no communication between plaintiffs and Shryock and Hauck in relation to any sale of the lands by the former. Nor from the latter date until in March, 1909, was there any such communication between them, except an interview between Williams and Shryock relating to some maps of the lands. But in March or early in April, 1909, all the owners being again present in Baltimore, defendant and other owners did in fact convey the entire boundary for eleven dollars per acre to the Chaffey-Wilson Lumber Company, for whom the Wilsons were formerly negotiating with plaintiffs for the lands. About six months thereafter plaintiffs, claiming as selling agents for defendant, instituted this action—*assumpsit*—to recover from defendant $5524.40, that sum being at the rate of one dollar per acre for the lands owned by it. Upon the conclusion of plaintiffs' evidence upon the trial of the case, the court, upon defendant's motion, excluded it and directed a verdict for defendant, and refusing to set aside the verdict and judgment and to grant a new trial, plaintiffs obtained this writ of error.

The argument by briefs is directed principally to a discussion of the sufficiency of the evidence for the consideration of the jury. If thus sufficient, and consistent with allegations of the declaration, the court erred in its rulings. The defendant insists it is objectionable in both aspects. It assails what purports to be common counts in the declaration, arguing in effect that they are not common counts but special counts on the contract. That view is apparently without substantial merit. The counts say that plaintiff performed certain work and services for defendant, for which it promised to pay upon request an amount plaintiff reasonably deserved to have therefor, what such services were reasonably worth, and that the defendant became indebted to them for such work and services and promised upon request to pay therefor, stating the same sum in each count. These counts are in proper form. Hogg's Plead. & Forms 232. The other counts of the declaration are upon contract, Shryock's telegram and other communications between him and Alexander being the basis therefor.

The evidence proves, first, a sale by plaintiffs to the Millers; second, a sale by them to the Wilsons. But it fails to show the agency through which sale was finally made to the latter. Touching the negotiations leading thereto, the only information imparted is that upon inquiry by defendant's agent Shryock or Hauck the Wilson's replied that they were no longer interested as purchasers of the property. Williams says he talked to the Wilsons once, perhaps twice, between October, 1907, and March, 1909; but on what account he does not say. Nor must it be necessarily assumed or inferred that his conversations related to a sale of defendant's lands. He then knew that the lands had previously been withdrawn from the market, at least that defendant's officers had so advised Alexander on the former date. They being so withdrawn, he was without authority to negotiate a sale thereof. Besides, the assumption is more reasonable that both he and his associate Alexander were then engaged, if in fact engaged at all, in an effort to sell as agents of McGraw and McClintic and for themselves as owners of integral parts of the boundary exclusive of defendant's lands. Where there is no proof of fraudulent or unfair revocation of authority, either under an option or a contract of agency, the revocation is

effective, and a sale or purchase thereunder does not become absolute unless the owner consents thereto. A sale by the owner operates as such revocation. *Dyer* v. *Duffy,* 39 W. Va. 148.

That plaintiff Alexander treated the telegram as an option is apparent from his own testimony. He sold to the Millers, and sought to secure the title in his name or under his control, that he might convey direct to the purchaser at an immense profit, and continued dealing therewith upon the assumption that he was still vested with the title, complaining when he ascertained that the deed executed by defendant to him as trustee had been withdrawn from escrow. He says: "When we made the sale to Miller I had a direct contract—ten dollars per acre—from the St. Lawrence (Sherwood) people, and any profit over the ten dollars I could have had." He also says that the conveyance to him was that he might deal with the Millers direct as to all the lands, the boundary in its entirety; that the reason the deed was made to him was that he had a price of fifteen dollars per acre from the Millers and ten from defendant, and that he and his partner were entitled to the difference; also that if defendant did not object he could go at any time and take the land at the price fixed by it. He told Huntley he had a deed for the land, thus indicating an intent to deal with the land either as an actual purchaser from defendant vested with the title, or as having right to demand title, thus negativing agency to sell.

But, treating his authority as an agency to sell at a profit to him measured by the excess above ten dollars per acre, the authorities require promptness, activity and expedition in effectuating its purpose. Where a limit in time is fixed by agreement of the parties, such time is deemed reasonable; and, unless the contract is optional or unilateral, it can not be revoked within the time fixed without liability. Under these conditions, it will be treated as exclusive, unless the contract otherwise provides. But where no time is fixed, the authority continues for a reasonable time only. *Lunney* v. *Healey,* 44 L. R. A. 608; *Tinsley* v. *Durfey,* 99 Ill. App. 239; *Saller* v. *McMurry,* 113 Mo. App. 253; *Oliver* v. *Katz,* 131 Wis. 409; *Stackler* v. *Kramer,* 118 Mo. App. 329; *Turner* v. *Snyder,* 111 S. W. 858;

*Dyer* v. *Duffy, supra.* If a contract does not specify the time in which it is to be performed, performance thereof 'must be had within a reasonable time, considering its subject matter. *Poling* v. *Boom & Lumber Co.*, 55 W. Va. 529; *Boyd* v. *Gunnison*, 14 W. Va. 1; Clark on Cont., §251. See also *Henderson* v. *Vincent*, 84 Ala. 99; *Biddison* v. *Johnson*, 50 Ill. App. 173; *Lane* v. *Albright*, 49 Ind. 375; *Steddman* v. *Richardson*, 100 Ky. 79; *Carroll* v. *Pettit*, 67 Hun. 418, 22 N. Y. S. 250; *Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 384, 38 Am. Rep. 441; *Shepler* v. *Scott*, 85 Pa. 329; *Darrow* v. *Harlow*, 21 Wis. 303, 94 Am. Dec. 541; 2 Parsons, Cont. 775; *Attwood* v. *Clark*, 2 Me. 249; *Chapman* v. *Dennison Co.*, 77 Me. 211. *Rowan* v. *Hull*, 55 W. Va. 335, construing a contract of agency for a definite period and until withdrawn, holds that an agency uncoupled with an interest and not for a fixed time may be revoked by the principal at will without liability for damages; and, though it be for a fixed time, still it may be withdrawn at will, but the principal will be liable to the agent for damages for wrongful revocation within such time; and that mere commision or reward to be earned by the agent in executing the agency does not alone make it one coupled with an interest.

In *Sibbald* v. *Iron Co., supra,* Justice Finch says: "Where no time for the continuance of the contract is fixed by its terms, either party is at liberty to terminate it at will, subject only to the ordinary requirement of good faith. Usually the broker is entitled to a fair and reasonable opportunity to perform his obligation, subject, of course, to the right of the seller to sell independently. But that having been granted him, the right of the principal to terminate his authority is absolute and unrestricted, except only that he may not do it in bad faith, and as a mere device to escape the payment of the broker's commissions. Thus, if in the midst of negotiations instituted by the broker, and which were plainly and evidently approaching success, the seller should revoke the authority of the broker, with the view of concluding the bargain without his aid, and avoiding the payment of commissions about to be earned, it might well be said that the due performance of his obligation by the broker was purposely prevented by the principal. But if the latter acts in good faith, not seeking to escape the payment

of commissions, but moved fairly by a view of his own interest, he has the absolute right before a bargain is made, while negotiations remain unsuccessful, before commissions are earned, to revoke the broker's authority, and the latter can not thereafter claim compensation for a sale made by the principal, even though it be to a customer with whom the broker unsuccessfully negotiated, and even though, to some extent, the seller might justly be said to have availed himself of the fruits of the broker's labor. Any other rule would prolong a contract with a broker indefinitely. No man could know when he was freed from its obligations, and a liability would be imposed not contained in the terms of the contract, and essentially perverting its legitimate construction." "Where the contract of agency is unlimited, no specific time being named therein, and a reasonable time elapses without a sale, the owner may in good faith, without design to avoid payment of commissions, revoke the agency, and may without impropriety afterwards sell and convey to the person with whom the agent had been negotiating. *Steadman* v. *Richardson, supra; Fairchild* v. *Cunningham*, 84 Minn. 521; *Le Force* v. *University*, 106 Mo. App. 517; *Wylie* v. *Bank*, 61 N. Y. 415.

There is no proof or intimation of fraud or *mala fides* in the defendant's refusal to accept the Wilsons as purchasers in 1907; nor do plaintiffs base their right to recovery on such default. On the contrary, they do not complain thereof. If in fact they subsequently continued negotiations with the Wilsons—a fact not proven, directly or impliedly, as we have seen—with the view of selling defendant's land to them, they thereby construed such refusal as made in good faith and not arbitrarily.

When it is recalled that Alexander received the Shryock telegram in May, 1906, that they made an ineffectual sale soon thereafter, that they took from that time until October, 1907, to find the Wilsons, to whom without complaint from plaintiff, defendant refused to convey for reasons assigned by them, but to whom it did convey in 1909, nearly a year and a half later, it can not with propriety be said that plaintiffs, under all the circumstances, acted under the agency within a reasonable time.

We are of opinion therefore to affirm the judgment.

*Affirmed.*