[No. 14432.    Department One.    April 18, 1918.]

## CALVIN PHILIPS & COMPANY, *Appellant*, v. NEWOC COMPANY, *Respondent*.[1]

BROKERS — CONTRACTS — COMMISSIONS — RELEASE—ESTOPPEL—INITIAL MISTAKE. Plaintiff, a broker, is not estopped to deny a release from defendant's application for a loan and agreement to pay commissions, where the release was given by a clerk to another broker through a mutual mistake, and defendant's application to such other broker was made on such mutual mistake and therefore not binding on defendant; since the essential elements of an estoppel *in pais*—a benefit on the one side or injury or the other—are wanting.

SAME — CONTRACTS — CONSTRUCTION — PERFORMANCE—REASONABLE TIME. An agreement to pay a commission for a loan to be made "to or through" a broker, may be repudiated where the broker's sole claim of performance was through a certain principal who unreasonably delayed in furnishing the loan, and there was no allegation or proof that the broker might have furnished the loan itself or through some other principal.

SAME — CONTRACTS — PERFORMANCE — ACCEPTANCE. To recover a broker's commission for furnishing a loan, the broker must show an unqualified acceptance by its principal, and an acceptance subject to inspection is not sufficient.

SAME—CONTRACTS—PERFORMANCE—REASONABLE TIME—EVIDENCE—SUFFICIENCY. In an action to recover a broker's commission for

[1]Reported in 172 Pac 355.

negotiating a loan to the defendant, required by September 1st, the evidence fails to show that plaintiff performed its contract within a reasonable time, where it appears that only a conditional acceptance of the loan had been made by plaintiff's principal, until August 29th, when notice was mailed in the east, and it is immaterial that plaintiff, on August 14th, gave defendant a self-serving statement that the loan had been accepted contrary to the fact that the acceptance was a conditional one and not binding on the principal who was to make the loan.

EVIDENCE — PAROL EVIDENCE TO VARY WRITING — ADMISSIBILITY. Parol evidence is admissible upon an issue as to the reasonable time for the performance of a broker's written contract to procure a loan, where the question was one of fact that could only be determined by parol evidence as to the situation of the parties and their practical construction of the contract.

Appeal from a judgment of the superior court for King county, Tallman, J., entered April 28, 1917, upon findings in favor of the defendant, dismissing an action on contract, tried to the court. Affirmed.

*E. L. Skeel* and *J. J. Geary (Roberts, Wilson & Skeel,* of counsel), for appellant.

*Herr, Bayley & Croson,* for respondent.

ELLIS, C. J.—This is an action for a commission, claimed by plaintiff to have been earned under a contract to procure a loan on real estate.

Plaintiff was the resident financial correspondent of the Penn Mutual Life Insurance Company of Philadelphia, Pennsylvania. One R. G. Holt, the western fiscal agent of the insurance company, had headquarters at Denver, Colorado. It was Holt's duty to examine western properties offered as security for loans and report his approval or rejection to the home office at Philadelphia. Defendant was a Washington corporation. Charles Cowen was its president and principal stockholder. Frank S. Bayley was its secretary. It owned lot 20 and the south half of lot 21, in block 12,

of Brooklyn addition to Seattle. That property was subject to a mortgage for $12,000, due September 1, 1916, which was controlled by John Davis & Company. The debt so secured was broken up into parts which were held by various debenture holders. John Davis & Company had notified defendant that this mortgage would be called at maturity and that defendant must signify an intention to make payment in time to assemble these debentures before maturity. The purpose of the loan here in question was to pay this existing mortgage. Plaintiff, at the time of the transaction here involved, was fully advised of these things.

Some time in May, 1916, defendant, through its president, Charles Cowen, began negotiations with plaintiff through its president, Calvin Philips, for the procuring of a loan upon the property above described for the purpose mentioned. The loan application and the commission agreement as parts of the same transaction were dated July 20, 1916, and were executed July 26, 1916. The application was made "to or through Calvin Philips & Co." so that the latter might lend its own money or the money of a third party. Neither the application nor the commission agreement contained any reference to the source from which the loan was to be procured, but it is admitted that, throughout the whole transaction, both before and after the application, no other source was contemplated by either party than the Penn Mutual Life Insurance Company. The application stipulated that the loan would be personally guaranteed by Carles Cowen, defendant's president. Defendant was advised that Holt must tentatively approve the application and security before the loan would be finally approved by the insurance company. Plaintiff's president testified that he informed Cowen that Holt would arrive in Seattle about the middle of August. Cowen testified that the

promised time was early in August. After the application was taken, owing to Cowen's insistence on an early reply, Philips, on July 31, 1916, forwarded the application to Holt at Denver for his approval prior to inspection of the property. Holt replied in due course, stating that he had forwarded it to the home office with his recommendation that it be accepted "subject to inspection." The term "subject to inspection" was explained by plaintiff's president as follows: Plaintiff had a working agreement with the Penn Mutual Company whereby, to save time, applications would be submitted to that company before inspection of the security by Holt. An approval subject to inspection meant that plaintiff was authorized to close the loan on condition that if the property, when subsequently inspected by Holt, failed to meet his approval, plaintiff would buy the loan from the insurance company. On August 8, 1916, the insurance company's home office at Philadelphia approved the application "subject to inspection," and so informed plaintiff by a letter which was received at Seattle on Saturday, August 12, 1916. That letter, so far as here material, was as follows:

"We have received from Mr. Holt the application of The Newoc Company for a loan of $13,500, 6%, repayable $500 at the end of one year, $1,000 at the end of two, three and four years, $500 at the end of six, seven, eight and nine years, $7,500 at the end of ten years, covering three story brick store and apartment building, 4230 14th Avenue, NE., lot 60 x 103 feet, Seattle, the borrower to have the privilege of doubling the above annual payments, and principal and interest to be guaranteed by Messrs. Chas. Cowen and Frank S. Bagley.

"This application has been approved upon the above basis and the loan will be made, if all things are found satisfactory, subject to investigation and return, and subject also to settlement at our convenience."

Plaintiff's office being unable to reach Cowen by telephone on Saturday, wrote defendant Monday, August 14, as follows:

"We have received from the Penn Mutual Life Insurance Company of Philadelphia, its approval of your application for a loan of $13,500. The loan will be made if title and all things are found satisfactory."

On August 15, Cowen called at plaintiff's office and, on being told of the letter, stated that he had not received it and that he had made application to John Davis & Company for the money. That application was made under the following circumstances: On August 7, John Davis, desiring final assurance as to defendant's ability to take up the prior mortgage, at request of Cowen, who was then in Davis's office, called up plaintiff's office for information. Calvin Philips, Jr., a son of plaintiff's president, answered the call and Davis asked whether the loan to Cowen would be made. Philips Jr., having in mind another application made by one Cahen, which had been rejected, answered "no" and told Davis that if he so desired he could go ahead and make the loan himself, as plaintiff had turned it down. It was admitted that this was an error resulting from confusion in the mind of young Philips of the names "Cahen" and "Cowen." Davis reported that statement to Cowen, who then signed an application to John Davis & Company for a $12,000 loan to replace the old mortgage.

As to what further transpired at the interview in plaintiff's office on August 15, plaintiff's president testified that Cowen said he would try to get Davis Company to release him from its application and would then submit his abstract of title to plaintiff for examination. Cowen denied this and further testified that, on August 10, he informed plaintiff that he would wait no longer for an answer, and that he maintained the

same attitude at the meeting of August 15th. Some time later defendant, with the consent of John Davis & Company, secured a loan on the property in question from another source and paid off the prior mortgage. Holt arrived in Seattle August 18, 1916, examined defendant's property, and thereafter communicated with the home office of the insurance company, recommending the loan. On August 29, 1916, the home office of the insurance company wrote plaintiff as follows:

"After investigation of the security in connection with the following proposed loans, our committee has concluded to remove the 'subject' condition: The Newoc Company $13,500, Manatawn Realty Company $16,000."

When this letter was received by plaintiff does not appear, but in due course it must have been some days after the first of September.

In its complaint plaintiff alleges that, pursuant to the application and commission contract, it negotiated with the Penn Mutual Life Insurance Company to procure the loan; that the insurance company approved the loan application and agreed to make the loan if the title to the property should be found satisfactory as provided in the application; that it thereafter notified defendant of such approval and defendant refused to take the loan. Defendant answered, alleging failure of plaintiff to procure the loan in a reasonable time, withdrawal by defendant of its application, and release of defendant by plaintiff from the contract prior to the time of any notification by plaintiff of approval by the insurance company.

The trial was to the court without a jury. The court found that the application and contract were made on July 20, 1916, and provided no specific time limit for procuring the loan, but stipulated that defendant would not make application elsewhere until an adverse de-

cision by plaintiff; that plaintiff knew that prompt action was necessary because the loan was wanted to pay off the mortgage falling due September 1, 1916; that plaintiff informed defendant, at various times from July 20 to about August 7, that Holt was expected at any time, but Holt did not arrive until August 18; that, on August 8, 1916, the insurance company wrote plaintiff that defendant's application had been approved on certain conditions, among which was the condition that the loan should be guaranteed personally by Frank S. Bayley, and also subject to inspection, and that the application and loan were not finally approved and accepted by the insurance company upon any basis until August 29, 1916, at Philadelphia, Pennsylvania. The court further found that, during the negotiations, it was not understood that the money for the loan would come from any other source than the insurance company, and that plaintiff did not offer or agree to procure the loan from any other source; that the acceptance by the insurance company of the loan was not within a reasonable time after delivery of the application nor in accordance with its terms, and that, by reason thereof, plaintiff did not perform the terms and conditions contained in the application and commission agreement to be performed on its part. Finally, the court found the facts as above stated touching the conversation between Calvin Philips Jr. and John Davis, wherein, by reason of the confusion of the names of "Cowen" and "Cahen," Davis and defendant were led to believe that defendant was released from his application with plaintiff. As matters of law, the court concluded that plaintiff never performed its contract so as to earn the commission sued for, and that plaintiff was estopped by reason of the above mentioned conversation with Davis from claiming a commission, and that defendant was entitled to judgment

dismissing the action. Judgment went accordingly. Plaintiff appeals.

Appellant's principal assignments of error and practically all of its argument are directed to the contention that the court's findings were not supported by the evidence and that the conclusions are contrary to the law.

Touching the question of estoppel, it is urged that appellant was not estopped to deny that it released respondent from its application and contract by the telephone conversation with John Davis on August 7. In this view we concur. In the first place, there was no privity between John Davis & Company, to whom the alleged release was made, and the respondent Newoc Company. In the second place, the information that the loan had been refused by appellant was based upon a mutual mistake of Calvin Philips Jr. and John Davis as to the identity of the loan concerning which they were talking. When, therefore, acting on that mistake, Davis induced respondent to make an application to John Davis & Company, that application was made on a misapprehension of the facts by both parties. As between respondent and John Davis & Company, therefore, the application to John Davis & Company was not a binding obligation. Respondent, on discovering the mistake, had a perfect right to repudiate that application without incurring any liability to John Davis & Company, and the transaction is, therefore, as between appellant and respondent, wanting in the essential elements of an estoppel *in pais*; viz., a benefit on the one side or an injury on the other. *Peck v. Peck*, 76 Wash. 548, 137 Pac. 137.

Appellant further contends that respondent had no right to repudiate the loan application and commission agreement on the ground that the Penn Mutual Life Insurance Company was unreasonably delaying its answer. This is on the theory that, since the application

was made "to or through Calvin Philips & Co.," appellant might have made the loan itself or might have procured it from some other source than the insurance company. The answer is that it never offered to nor bound itself to make the loan direct, and that there is neither allegation nor evidence that it ever attempted to procure, could have procured, or would have procured the loan from any other source. Its sole claim of performance was that it negotiated with, and finally procured consent to make the loan from, the insurance company. If appellant did not procure from the insurance company an unqualified approval of respondent's application within a time reasonable under the circumstances it did not earn its commission, since that is the only way in which it claims to have earned it.

The issue here is thus reduced to this: Did the appellant secure such an unqualified acceptance of the loan by the insurance company within a reasonable time as contemplated by the loan application and commission contract? As answering this question in the affirmative, appellant relies upon its notification to respondent by the letter of August 14 that the application had been approved and the loan would be made. If, however, the application had not, in fact, then been approved according to its terms, but only with added conditions not contemplated by the application, then it is plain that the letter of notification to respondent had no probative force to establish the requisite unconditional acceptance, hence no tendency to prove the earning of appellant's commission. That letter could only have such probative force when supplemented by proof that the insurance company had, prior to that time, actually accepted the application as made. Without such supplemental proof the letter to respondent was a mere self-serving declaration on appellant's part. No such supplemental proof was made. On the contrary, the

letter from the Penn Mutual Life Insurance Company to appellant dated August 8, 1916, imposed the added condition not found in the application that principal and interest of the proposed loan should be guaranteed by Frank S. Bagley, evidently meaning Frank S. Bayley, who was secretary of respondent. This was not an acceptance of the application and did not bind the insurance company to make the loan as applied for, even subject to inspection of the property, yet it is the only acceptance or authorization to make the loan of which there was any proof prior to the final unconditional acceptance of August 29 removing the subject to inspection condition. Even that letter does not purport to remove the requirement of the former letter that the loan be guaranteed by Bayley. It is true that appellant's president testified that the last mentioned condition was a mistake which was later corrected by the insurance company, but no letter or telegram was offered in proof of such correction and there is nothing whatever in the evidence to show when, if ever, that correction was made. The burden was upon appellant to show a timely authorization to make the loan as applied for. A mere general statement that the requirement that Bayley should guarantee the loan was a mistake which was "later" corrected was not such proof. The time and manner of such correction, if ever made, was peculiarly within appellant's knowledge. As a part of its proof of an acceptance of the loan by the insurance company within a reasonable time it was incumbent upon appellant to show that that correction was made within such reasonable time. It is true also that respondent did not know of the conditional form of the acceptance and sought to withdraw its application before it discovered the truth. It may be conceded also that respondent had no right to withdraw the application till a reasonable time had expired.

The attempted withdrawal, however, neither hastened nor retarded the acceptance of the application by the Penn Mutual Company. The vital point is that appellant is seeking in this action to recover as for a commission actually earned; it must show, therefore, an actual acceptance within a reasonable time, regardless of respondent's knowledge or lack of knowledge as to the character of the acceptance which was actually secured.

Moreover, the approval of the insurance company embodied in its letter of August 8, in addition to requiring a guaranty not called for in the application, was only an approval subject to inspection. Obviously such an acceptance or approval would bind nobody to make the loan. It would be in no sense binding as between the applicant for the loan and the insurance company until actual inspection and acceptance by its fiscal agent, Holt, of the security offered, or until appellant itself had actually made the loan without such inspection and acceptance. Appellant's notice of August 14 to respondent was not an offer on its own part to make the loan. Even if it could be so construed, it contained the saving clause "if title and all things be found satisfactory." It did not bind the insurance company to respondent to make the loan, because that company had only authorized an acceptance subject to inspection and approval of the security, which was, for practical purposes, no acceptance. It did not bind appellant to make the loan, because it contained no promise or claim that appellant or any one, save the Penn Mutual Life Insurance Company, would make it, and that only *if all things were found satisfactory*. Appellant was taking no risk of the loan being refused by the insurance company's fiscal agent, Holt. Whether intentional or not, it was apparently attempting to lead respondent to take that risk without frankly divulging the fact that

there was such a risk. These considerations make it too plain for cavil that the court's finding of fact that the application and loan were not approved and accepted by the insurance company, so far as respondent was concerned, on any basis until its letter of August 29, 1916, at Philadelphia, Pennsylvania, was amply supported by the evidence. That acceptance, in the nature of things, could not have been communicated to respondent at Seattle until some time after September 1, 1916.

The court's further finding that .no acceptance of the loan by the insurance company was made within a reasonable time is also amply sustained. The evidence clearly shows not only that appellant was fully advised before taking the application of respondent's purpose in seeking the loan; viz., to take up the prior mortgage maturing September 1, 1916, but also shows that both parties, by their subsequent conduct throughout, recognized that only an acceptance communicated to respondent in time to enable it to close the loan and make the necessary arrangements to .pay off the prior mortgage on or about its maturity would be an acceptance within a reasonable time.

Appellant argues that evidence of these things was inadmissible as tending to vary the terms of the written contract. The case of *Hoffman v. Tribune Pub. Co.*, 65 Wash. 467, 118 Pac. 306, is cited in this connection. As we read it, however, that decision is not in conflict with the views here expressed. There the written contract was construed as a contract to furnish machinery within a reasonable time. Defendant, in that case, attempted to show a contemporaneous, collateral, oral agreement that the delivery was to be made within four weeks and, as the opinion says, "irrespective of the question whether that period was or was not a reasonable time." We held that this was an

attempt to vary the written contract by oral evidence, rather than to prove what was a reasonable time, but we also said:

"What constituted a reasonable time was a question of fact which appellant was entitled to show by competent evidence. The trial judge expressed and announced his willingness to admit such evidence."

As we view it, that is what was done in this case. What is a reasonable time being a question of fact, it could only be determined by parol evidence as to the situation of the parties, the purpose of the contract, and the practical construction put upon it as shown by the subsequent conduct and declarations of the parties. *Alexander v. Sherwood Co.*, 72 W. Va. 195, 77 S. E. 1027, 49 L. R. A. (N. S.) 985, and note p. 995; *Alford v. Creagh*, 7 Ala. App. 358, 368, 62 South. 254; *Cotton v. Cotton*, 75 Ala. 345; *Cocker & Co. v. Franklin Hemp & Flax Mfg. Co.*, Fed. Cas. No. 2,932; *Biddison v. Johnson*, 50 Ill. App. 173; *Geiger v. Kiser*, 47 Colo. 297, 107 Pac. 267; *Smith Sand & Gravel Co. v. Corbin*, 81 Wash. 494, 142 Pac. 1163.

Appellant's president testified:

"I knew of the mortgage which fell due on September 1st and that Mr. Cowen would have to have action in ample time for that mortgage to be met at maturity. . . . We did not tell him that Mr. Holt would be here early in August. I believe we told him the middle of August. Mr. Cowen came in every two or three days and we kept him posted as to the progress in the matter. After Mr. Cowen signed the application he frequently pressed us for an answer."

The record is replete with testimony showing that appellant was throughout conceding that an acceptance too late to close the loan in time to enable respondent to meet the prior mortgage would not be an acceptance within a reasonable time.

We are clear that the court committed no error in making the last two findings complained of. It follows that appellant failed in an essential element of proof, in that it did not establish as a fact that it had procured the unqualified consent of the insurance company to make the loan within a reasonable time under the circumstances of this case, and, therefore, failed to prove that it had earned the commission claimed. The judgment is affirmed.

WEBSTER, FULLERTON, MAIN, and PARKER JJ., concur.