## Wytheville

### R. LEE WILSON v. JOSEPH BROWN.

June 14, 1923.

1. APPEAL AND ERROR—*Reversal—General Rule.*—A verdict, abundantly supported by the evidence, will not be disturbed on appeal unless for error in the rulings of the trial court.

2. INSTRUCTIONS—*Repetition.*—The multiplication of instructions does not tend to enlighten the jury, and is a practice to be avoided.

3. APPEAL AND ERROR—*Instructions—Not Error to Refuse Further Instructions where a Point is Covered by Instructions Given.*—Where the jury has been sufficiently and correctly instructed on any point, it is not error to refuse further instructions on that point, however correct a tendered instruction may be.

4. BROKERS—*Real Estate Brokers—Exclusive Agency—Case at Bar.*—In the instant case, an action by a real estate broker for commissions, the broker had expended time and money in procuring a purchaser at the price agreed with the landowner, and the landowner had agreed that the agency to sell should not be withdrawn at any time except upon ninety days notice.

   *Held:* That this was something more than a mere agreement to accept an offer made within a given time. It was a contract from which the landowner could not recede without notice, and escape liability to the broker.

5. BROKERS—*Real Estate Brokers—Agency Coupled with an Interest—Liability of Landowner upon Unauthorized Revocation—Contract with Broker.*—While the right to commissions of a real estate broker upon making a sale, or the profit he will make upon such sale, is not such an interest as to constitute an "agency coupled with an interest," and hence the agency or power may be revoked, this does not absolve the principal from liability to the broker for a loss sustained by such revocation after the broker has procured a customer.

6. AGENCY—*Revocation—Liability of Principal to Agent.*—When an agency is not such as to constitute what in legal parlance is called a power coupled with an interest, and no third party's rights are involved, the agency, so long as it remains unexecuted, may be effectually revoked at the will of the principal, but a wrongful revocation will nevertheless render him liable in damages to his agent. In other words, the agency may always be revoked, but the contract of employment will not necessarily be thereby rescinded.

7. INSTRUCTIONS—*Instruction not Warranted by the Law of the Case.*—It is no error to refuse an instruction which does not adequately embody the principles of law governing the point upon which it is asked.

8. INSTRUCTIONS—*Partial View of the Evidence.*—It is no error to refuse an instruction containing only a partial view of the evidence on the subject.

9. BROKERS—*Real Estate Brokers—Instructions—Misleading Instruction.*— In an action by a broker for commissions, the evidence showed that one M. was not a partner with the broker, but a mere helper in finding a purchaser. The testimony also clearly showed that M. was not interested in the purchase. Defendant asked and was refused an instruction to the effect that if M. and the broker "were working together," and that M. was to be interested in the purchase with the buyer, this constituted a violation of the broker's agency and revoked it.

*Held:* That the words "were working together" were misleading in view of the evidence.

10. BROKERS—*Real Estate Brokers—Action for Commission—Damages Fixed by the Contract—Judgment by Appellate Court.*—A broker's contract of employment definitely fixed his compensation at $2,000 in case of a sale. The jury found a verdict for the broker and fixed his damages at $1,000. The finding was based upon the theory that plaintiff had complied with his contract, and had produced to the defendant a purchaser ready, able, and willing to purchase.

*Held:* That as the contract definitely fixed the measure of the plaintiff's recovery, and there was nothing speculative or uncertain about it, the jury had no right to set up their judgment as to what was fair compensation, against the express terms of the contract, and that under Code of 1919, section 6365, the Supreme Court of Appeals would set aside the verdict as to the amount of the damages, and enter final judgment for the plaintiff for $2,000.

Error to a judgment of the Circuit Court of Prince William county, in a proceeding by motion for a judgment for money. Judgment for plaintiff for a less amount than he sued for. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Barbour, Keith, McCandlish & Garnett,* and *F. D. Richardson,* for the plaintiff in error.

*H. Thornton Davies*, for the defendant in error.

BURKS, J., delivered the opinion of the court.

This was a proceeding by motion by Wilson against Brown to recover $2,000.00 as commissions for the sale of a tract of timber land. There was a verdict for Wilson for $1,000.00 which he moved the trial court to set aside and to enter judgment in his favor for $2,000.00, but the trial court refused to do this, and entered judgment in his favor for $1,000.00, and he excepted, and applied for and obtained a writ of error from this court.

James Brown and Joseph Brown owned jointly the tract of land and listed it with Wilson for sale at $8,000.00 net, and agreed to give him all over that sum he could obtain as compensation for his services. The listing was on a printed card furnished by Wilson and filled out and signed by the Browns. It contained the following paragraph:

"Price $8,000.00 net, terms   *   *   *   *   *   For the consideration of advertising and making reasonable efforts to sell the same, this property is hereby listed with R. Lee Wilson, as exclusive agent, to be withdrawn at any time upon ninety days' notice. Provided that if sold directly through his efforts all over and above my price as above stated is forthwith due and payable to· him."

[1] Wilson claimed to have produced to the owners. a purchaser able, ready and willing to buy on the terms. listed, and at the price of $10,000.00, but that the sale was "defeated solely by the whimsical or unreasonable refusal of the owners to carry out their contract with the plaintiff." James Brown died before suit was. brought. Hence the action was brought against Joseph

Brown, the survivor, who had, by the death of James, become the sole owner of the whole tract. He defended chiefly on the ground that no such purchaser had been produced, and that before such purchaser was produced he had revoked the powers of Wilson to sell. Other defenses dependent on disputed questions of fact will be noticed later, so far as necessary. The verdict of the jury, which is abundantly supported by the evidence, settled the right of the plaintiff to recover, and that finding cannot be disturbed unless the trial court committed some error in its rulings on the instructions which may have induced the finding.

No complaint is made of the instructions given, but the refusal to give several instructions tendered by the defendant, and refused, is assigned as cross-error.

The defendant asked for three instructions on the subject that when the terms of sale given to a real estate broker are left blank, a sale for cash is implied, and there is no authority to sell on credit. The instructions were asked in varying language, but they amounted to the same proposition, though some gave more details of the testimony than others. The court gave one of them in the following language:

"The court instructs the jury that the power to sell implies a cash sale, unless expressly authorized to the contrary, and that any extension of time of payment, no matter howsoever small, is not cash."

[2, 3] There was no error in refusing the other two. The multiplication of instructions does not tend to enlighten the jury, and is a practice to be avoided. *Newport News Co.* v. *Beaumeister*, 102 Va. 677, 47 S. E. 821; *Wallen* v. *Wallen*, 107 Va. 131, 57 S. E. 596. Where the jury has been sufficiently and correctly instructed on any point, it is not error to refuse further instructions on that point, however correct a tendered instruc-

tion may be.  *Dupont Co.* v. *Snead's Adm'r*, 124 Va. 177, 97 S. E. 812.

An exclusive power was given Wilson to sell the land "for the consideration of advertising and making reasonable efforts to sell the land," which it was agreed could not be withdrawn for a period of ninety days.  Within the time limited, and before revocation of his powers, Wilson wrote to different persons about the land, and sent an agent to Baltimore and later to the city of Washington to interview prospective purchasers, and secured one in the latter city ready, able and willing to purchase at the owners' price.  A mistake was made by Wilson in giving the terms of sale to the purchaser. He named half cash and the balance some months thereafter.  This offer he promptly communicated to the two owners by mail on April 6, 1920.  On the next day, and before the communication had been received, Wilson met James Brown, one of the joint owners, and informed him of the communication, and of the mistake made in the terms, and told him that the purchaser would pay all cash, if desired.  James Brown expressed himself as gratified at the sale as "it will give me some money in my old age," and made no objection to the terms, nor any request for all cash.  On the following day, April 8, 1920, Joseph Brown wrote Wilson: "I am writing you in regards to that land we listed with you.  I have bought my uncle's interest and am not going to sell."  The statement that he had bought his uncle's interest was not true.  Whether or not James Brown communicated the conversation with Wilson to Joseph Brown does not appear from the record, but shortly after April 8, 1920, Wilson saw Joseph Brown and informed him he was ready to pay him the $8,000.00 cash for the land, but he refused to conclude the sale at that price and wanted $15,000.00

net.  If it be conceded that Joseph Brown had the power to revoke the joint power given by him and James Brown to Wilson to sell the land, he had no right to do so at that time without accountability to Wilson.   Wilson had expended time and money in procuring a purchaser at $10,000.00 and Brown had agreed that the agency to sell should not be withdrawn at any time except upon ninety days' notice.   This was something more than a mere agreement to accept an offer made within a given time.   It was a contract from which Brown could not recede without notice, and escape liability to Wilson.   It is generally conceded that, in a case of this kind, the commissions of the agent, or the profit he will make by effecting the sale, is not such an interest as to constitute an "agency coupled with an interest," and hence the agency or power may be revoked, but this does not absolve the principal from liability to his agent for the loss he has sustained.   This subject is very fully considered by Judge Kelly in *Atlantic Coast Realty Co.* v. *Townsend,* 124 Va. 490, 98 S. E. 684, and he gives a very full citation of the authorities.   Paragraphs 5 and 6 of the syllabus, which are fully sustained by the opinion, are as follows:

[6] "When an agency is not such as to constitute what in legal parlance is called a power coupled with an interest, and no third party's rights are involved, the agency, so long as it remains unexecuted, may be effectually revoked at the will of the principal, but a wrongful revocation will nevertheless render him liable in damages to his agent.   In other words, the agency may always be revoked, but the contract of employment will not necessarily be thereby rescinded.

"In the instant case the brokerage company's agreement to furnish the money for the development and

subdivision of the land, and for the expenses of the sales, was a valuable consideration for the agreement that the brokerage company should have the exclusive right of sale for a year. And, while the agency was not coupled with such an interest as to make it irrevocable, the contract which created it was a mutual agreement between competent parties for a lawful purpose and upon a valuable consideration, with the result that neither party could violate it without becoming responsible to the other for the breach."

To the same effect, see *Rowan* v. *Hull*, 55 W. Va. 335, 47 S. E. 92, 104 Am. St. Rep. 998, 2 Ann. Cas. 884; *Cloe* v. *Rogers*, 31 Okl. 255, 121 Pac. 201, 38 L. R. A. (N. S.) 366 and note; *Alexander* v. *Sherwood*, 72 W. Va. 195, 77 S. E. 1027, 49 L. R. A. (N. S.) 985, and note.

[7, 8] Instruction 3 tendered by the defendant did not adequately embody the principles stated above, and the trial court committed no error in rejecting it.

Instruction 4 tendered by the defendant and refused need not be recited. The trial court committed no error in refusing it for the reason stated in the last paragraph, and for the further reason that it contains only a partial view of the evidence on the subject.

[9] Instruction 5 tendered by the defendant and refused was. as follows:

"The court instructs the jury that if they believe from the evidence that Wilson and Mathers were working together and that Mathers negotiated a sale to Duvall for other than cash, and that Mathers was to be interested in the purchase with Duvall, then such violated the agency with Brown and revoked the said agency, and they must find for Brown, unless they shall further believe that these facts were fully made known to said Brown."

The trial court committed no error in refusing this

instruction.   The term "were working together" was
misleading in view of the evidence in the cause.   The
evidence abundantly shows that Mathers was not a
partner with Wilson in making the sale, but, as he
describes himself, was a mere "helper of his in selling,
or finding buyers for property listed on cards that he
had."   The testimony of both Duvall and Mathers
also clearly shows that Mathers was not "to be inter-
ested in the purchase with Duvall."   The only basis
for the latter part of the instruction above mentioned
was a letter written by Duvall to "Messrs. Wilson &
Mathers" which is sufficiently explained by the testi-
mony of Duvall and Wilson.   The expression "for other
than cash" has been sufficiently considered in the dis-
cussion of other instructions.

[10] This brings us to a consideration of the amount
of the verdict.   The jury have found by their verdict
that the plaintiff is entitled to recover, and, as we have
seen, that finding is abundantly supported by the evi-
dence and cannot be disturbed by this court.   That
finding is based upon the theory that the plaintiff had
complied with his contract, and had produced to the
defendant a purchaser ready, able and willing to pur-
chase the land on the terms fixed by the owners.   If
so, then the contract of employment fixed definitely the
measure of the plaintiff's recovery, to-wit, all in excess
of $8,000.00 net to the owners, or, in this case, $2,000.00.
There was nothing speculative or uncertain about it,
and the jury had no right to set up their judgment as
to what was fair compensation for the service rendered,
against the express terms of the contract fixing that
compensation.   There is no evidence to support a find-
ing of only $1,000.00.   If we should reverse the case
and send it back on account of the amount of the ver-
dict, the question of the liability of the defendant would

not be open to further inquiry, as his liability has been fixed by the present verdict, after a fair trial on the merits, and we should feel compelled to inform the jury, as a matter of law arising upon the interpretation of the contract, that the plaintiff was entitled to recover the excess of the purchase price offered over $8,000.00.   To do so would be a useless expenditure of time and money. Under these circumstances, it is the plain duty of this court, under section 6365 of the Code, to set aside the verdict of the jury as to the amount of the plaintiff's damages, and the judgment thereon, and to enter final judgment for the plaintiff for $2,000.00 with legal interest thereon from June 13, 1921, till payment, and his costs in this court and also in the trial court, and such judgment will be accordingly entered.

*Reversed.*