## Richmond.

## PALMER V. SHOWALTER.

### November 20, 1919.

1. REAL ESTATE BROKERS—*Fraud and Deceit—Presumption—Action by Broker Against Landowner.*—In an action by a real estate broker against a landowner and a third party for damages, the broker alleged that the sale of the property in question to the third party was a mere device to deprive him of his commissions, the third party at once transferring the land to a purchaser furnished by the broker.

   *Held:* That the landowner was entitled to the presumption of fair dealing, and plaintiff's proof in the case must be clearly and satisfactorily sufficient to overturn that presumption in order to entitle him to a recovery against the landowner. Mere suspicious circumstances would not be enough to warrant such a recovery in such a case.

2. NEW TRIALS—*Appeal and Error—Weight Attached to Action of Trial Court.*—Due weight must be given to the action of the judge of the trial court in setting aside a verdict as against the evidence or without evidence to sustain it.

3. NEW TRIALS—*Verdict Without Evidence or Against the Evidence.*—It is the duty of the trial judge to set aside a verdict if it is plainly against the evidence or without evidence to sustain it.

4. NEW TRIALS—*Appeal and Error—Verdict Without Evidence or Against the Evidence.*—The Supreme Court of Appeals will sustain a verdict, although it was set aside by the trial judge, unless it can perceive that there has been a plain deviation from right and justice, and that the jury have found a verdict against the law, or against the evidence.

5. REAL ESTATE BROKERS—*Fraud and Deceit—Device to Deprive Broker of his Commissions.*—In an action by a real estate broker against a landowner and a third party for damages, the broker alleged that the sale of the property in question to the third party was a mere device to deprive him of his commissions, the third party at once transferring the land to a purchaser by the broker. There was ample testimony to sustain the jury in concluding that the sale to the third party

was not a *bona fide* sale, but was merely a pretended sale, and that the sale was in truth one from the landowner to a customer of the broker.

*Held:* That a verdict in favor of the broker would not be disturbed.

6. JOINT TORT-FEASORS—*Verdict Against one Tort-Feasor not an Acquittal of the Other.*—In an action by a real estate broker against a landowner and a third party for damages, the broker alleged that the sale of the property in question to the third party was a mere device to deprive him of his commissions, the third party at once transferring the land to a purchaser furnished by the broker. The fact that the jury brought in no verdict against the third party, but only against the landowner, does not indicate that they acquitted the third party of all complicity in the pretended sale.

7. CONTRIBUTION AND EXONERATION—*Joint Tort-Feasors—Verdict Against one Tort-Feasor not an Acquittal of the Other.*—The law imposes no duty of contribution between joint tort-feasors to the payment of damages occasioned by their joint tort. The right of recovery of a plaintiff in such case being several as well as joint, nothing is more common than for juries to fail to bring in a verdict against all the tort-feasors sued, and that without any intention of wholly acquitting any of them of misconduct.

Error to a judgment of the Circuit Court of Augusta county in an action of trespass on the case. Judgment for defendants. Plaintiff assigns error.

*Reversed.*

This is an action in tort instituted by motion to recover $500, alleged damages, but involves the ultimate question of whether the plaintiff in error (Palmer), who was the plaintiff in the court below, and is a real estate agent, was entitled to commissions on a certain sale of real estate made by the defendant in error (Showalter).

The sale in question was consummated by a deed of date March 27, 1917, from Showalter to one George A. Brown, conveying a certain farm for the consideration stated in the deed of $14,700.00 cash in hand paid by the latter to

the former, and a deed of the same date from George A. Brown to one Floyd E. Brown conveying the same farm for the consideration stated in such deed of $15,000.00 cash in hand paid by the last named party to George A. Brown.

The farm was placed by Showalter, its owner, in the hands of the plaintiff, as a real estate agent, for sale, about November 15, 1916, at the listed price of $15,500.00; and it is sufficient to say of the contract between Showalter and the plaintiff that it is a *concessum* in the case, that under the established rule of law on the subject and under the facts in this case, if the sale above mentioned was in truth a sale from Showalter to Floyd E. Brown then Showalter was obligated to pay to the plaintiff the sum of $500 as the commissions of the latter on the sale, notwithstanding the fact that Showalter abated the purchase price he received below the $15,500 at which he listed the property with the plaintiff; and the issue in the case is whether said sale was in truth a *bona fide* sale by Showalter to said George A. Brown or was merely a pretended sale to him, being in truth a sale from Showalter to said Floyd E. Brown, cloaked and attempted to be disguised as a sale to said George A. Brown with the purpose and intent on the part of the said Showalter of escaping the fulfilment of his obligation aforesaid to the plaintiff.

In the action as instituted in the court below the said George A. Brown was charged with being a joint tort feasor and was made a co-defendant with Showalter.

There was a trial by jury and a verdict in favor of the plaintiff against Showalter alone for the $500 damages claimed by the plaintiff—the said co-defendant George A. Brown not being mentioned in the verdict. This verdict the learned trial judge set aside and granted a new trial. On the second trial neither party offering to introduce any evidence there was a verdict and judgment for the defendant, Showalter, and the said plaintiff brings error.

Looking first to the proceedings on the first trial and considering all of the evidence introduced on that trial both for the plaintiff and the defendants therein, as is required by our procedure where the verdict of the jury has been set aside by the trial judge, we find the following situation as shown by the record before us.

For some time prior to the execution of said deeds it had developed that Showalter was willing and anxious to sell said farm to Floyd E. Brown at the price of $15,000 if he could escape paying the plaintiff any commissions out of this; and Floyd E. Brown was willing, able and anxious to purchase the farm from Showalter at that price, but was not willing to pay the additional $500 to cover the plaintiff's commissions aforesaid, or any sum in excess of the $15,000; so that the fact that the plaintiff was entitled to such commissions was the sole obstacle which stood in the way of the consummation of such sale from Showalter to Floyd E. Brown. Thereupon both Showalter and Floyd E. Brown from time to time importuned the plaintiff to waive his right to said commissions and let them consummate the sale, but this the plaintiff declined to do. Thereafter, early in January, 1917, not later than January 4th (the record not disclosing the precise time in that month) Showalter and Floyd E. Brown agreed upon a plan by which they expected to accomplish the sale and conveyance of the property from the former to the latter, at the price of $15,000 only, to be paid by Floyd E. Brown, and that amount to be received net by Showalter, by defeating the plaintiff of his right to receive said commissions, and that plan was the following: That there would be a pretended sale and a conveyance by Showalter to one Newt. Brown, a brother of Floyd E. Brown, for some pretended consideration, the precise amount of which does not appear in the record. That the sale to Newt. Brown, with whom the

plaintiff had had no communication on the subject of the sale of said property and who was, therefore, not a customer of the plaintiff, would thus be made free of any obligation of the defendant, Showalter, to pay the plaintiff any commissions of sale, and that Newt. Brown would then sell and convey the property to Floyd Brown for the consideration of $15,000 for the benefit of Showalter. Accordingly Showalter and Floyd E. Brown went so far in the execution of this plan as to employ an attorney to draft a contract of sale of said farm in writing from Showalter to said Newt. Brown. This was on or about January 4, 1917. But while the attorney was engaged in the draft of this contract, both Showalter and Floyd E. Brown being present, the attorney asked, in substance, whether Floyd E. Brown was in truth the purchaser from Showalter and whether the device of using Newt. Brown as an intermediary was with the intent and for the purpose of defeating any real estate agent of sale commissions to which the latter might be entitled on a sale directly from Showalter to Floyd E. Brown; and the attorney stated that if that was the case "the agent would come in for his commissions." Thereupon these parties dropped that matter and dispersed, the attorney not finishing the draft of that contract.

On January 4, 1917, after the abortive attempt to consummate the sale from Showalter to Floyd E. Brown aforesaid through the intermediary Newt. Brown as a pretended independent purchaser, Floyd E. Brown made a special trip, a distance of some twelve miles, to see the plaintiff and again endeavored to persuade the latter to forego his commissions so as to permit the sale aforesaid to go through, but the plaintiff again declined to consent to do this; and Showalter chancing to meet the plaintiff about this time displayed some temper charging the plaintiff with having "treated him (Showalter) badly" in breaking up his sale to Floyd E. Brown by adhering to the claim of commissions aforesaid.

Floyd E. Brown and George A. Brown testified in the case. Showalter did not testify therein; but his failure to do so is explained by the fact shown in evidence that he had had a stroke of paralysis in September, 1917, about a year before the first trial of the case, and at the time of such trial was suffering from Bright's disease and high blood pressure, and, although he was then going about and attending to his business, his physician testified at such trial that he "would advise that it would not be safe to bring him here (to the trial) as a witness."

The facts mentioned in the three paragraphs next above are uncontroverted.

We come now, however, to some matters which are and to some which are not the subject of conflict in the testimony in the case.

Floyd E. Brown in his testimony stated, in substance, that the deeds aforesaid were made in execution of prior contracts of sale between Showalter and George A. Brown and between George A. Brown and himself which were wholy independent of each other. That at the time of the purchase by George A. Brown from Showalter, witness did not even know George A. Brown personally and had had no communication with him. That witness' information that George A. Brown had become the purchaser of the farm did not come from Showalter, but from one Strauss, who held a deed of trust on the property. That he had given up all consideration of buying the property when Strauss called his attention to the fact that George A. Brown had bought the place and told witness "it was for sale and said if I (witness) wanted it to go on and see Mr. Brown and see what arrangements I (witness) could make with him." That he promptly went to see George A. Brown and in that interview came to an agreement with him by which witness bought the property at the price of $15,000; that

he had no understanding with George A. Brown or Showalter that the matter was to be handled in this way to keep the plaintiff from collecting commissions. But this witness also first testified, in substance, that he had no knowledge of the prior attempt to accomplish the sale of said property to himself by Showalter, through Newt. Brown as above mentioned, or that any such plan or purpose was on foot at any time, and yet later on in his testimony, when confronted with a contrary statement made by him to another, he admitted the existence of such a plan and that he was present with Showalter in the attorney's office, as above stated, and that he knew that a contract was being then written between Showalter and said Newt. Brown "for the purpose of getting this farm without paying Mr. Palmer his commissions." And there are other statements of Floyd E. Brown of which it is deemed sufficient to say that they very effectually discredited his testimony and tended to show that he and not George A. Brown was the real purchaser of the farm from Showalter and that the use of George A. Brown as an intermediary was but a device to cloak the true nature of the transaction.

George A. Brown in his testimony stated, in substance, that there was "not a bit of truth" in the charge of the plaintiff that he and Floyd E. Brown attempted "to beat the plaintiff out of his commissions" aforesaid, by the witness taking the place in his name and then immediately conveying it to Floyd E. Brown; that he bought the farm for himself and gave Showalter $14,700 for it; that he was not a customer of the plaintiff but dealt directly with Showalter. This witness first testified that he bought the farm from Showalter about the middle of January, 1917, at a time when he did not know Floyd E. Brown personally and when he had never heard that Floyd E. Brown had been

trying to buy the property, but when confronted with the question of his having made a contrary statement to another, he admitted that he had heard this before the time mentioned. Later in his testimony this witness admitted that what he had testified constituted the purchase of the property of Showalter about the middle of January was a mere verbal talk, the details of which the witness does not give, stating the mere conclusion that he then "bought" the place verbally of Showalter at the price of $14,700. But he admits in his subsequent testimony that he knew at the time that the verbal talk he had with Showalter did not make a binding contract between them; that no considertion for the contract was paid at that time; that he knew that the contract would not be binding until it was executed in writing; that in a few days after the verbal talk of witness with Showalter the latter came back to town and in the meantime witness had sold the property to Floyd E. Brown at the price of $15,000, making as he claimed $300 on the transaction. That thereafter he had a written contract with Showalter and also with Floyd E. Brown. When asked, "But you didn't close it up in writing" (referring to his contract with Showalter) "until you found out that you could sell it at a profit?" he answered "Sure, yes sir." And later on in his testimony this witness was asked the following question: "But you didn't buy it at all; you didn't enter into any contract with him" (Showalter) "until after you had agreed to sell it to Floyd E. Brown at a profit of $300.00?" To this question the witness answered, "That is right, yes sir; the contract shows that," referring to the written contract between himself and Showalter. And still later on he refers to making his first payment of purchase money to Showalter by a check given "when I made the contract," which was on the day the contract in writing between him and Showalter was executed.

40

Moreover George A. Brown first denied that he knew anything about the abortive attempt of Showalter to sell the property to Floyd E. Brown through the device of using Newt. Brown as an intermediary as aforesaid, then admitted that he had *heard* of it, drawing the distinction between *hearing* and *knowing*. And there are other statements of George A. Brown in his testimony of which it is sufficient to say that they were of a character and his manner of testifying was such that it left the case open to a reasonable conclusion by the jury that George A. Brown was not frank and open in his testimony and that he knew and had more to do with the existence of a plan and purpose on the part of Showalter to accomplish a sale of the property to Floyd E. Brown through him as an intermediary than the witness would expressly admit.

The record discloses as an uncontroverted fact in the case that the written contracts of sale from Showalter to George A. Brown and from the latter to Floyd E. Brown were dated respectively January 22 and 23, 1917; but the testimony was not definite as to when these written contracts were executed and was of such a character as permitted the jury reasonably to conclude that such contracts were in fact executed cotemporaneously. Further, it is an uncontroverted fact that at the time such written contracts were executed and for several days prior thereto, Showalter knew that thereby he would accomplish the sale of the property to Floyd E. Brown at the price of $15,000 and thus indirectly get the benefit of the purchaser procured for him by the plaintiff.

Further: The testimony of both George A. Brown and Floyd E. Brown was lacking in definiteness and consistency on the subject of how and when George A. Brown was paid the $300 profit he claimed to have received of Floyd E. Brown on the transaction. George A. Brown did give

his check to Showalter for $500 on the 22nd of January, 1917, which was cashed through the banks by Showalter, and George A. Brown testified that Floyd E. Brown paid him $750, made up of a check and "some money" he thinks, he didn't "know for sure." But this would have paid him only $250, instead of $300 profit, and Floyd E. Brown did not produce any cancelled check to George A. Brown, although he promised to do so if he could find it and did not. at any time satisfactorily account for his failure to produce such check. All of which left it open to the jury reasonably to infer that Floyd E. Brown in fact refunded to George A. Brown only the $500 amount of the check of the latter to Showalter or perhaps something in addition for his trouble, the record not satisfactorily showing · what. And no other check to Showalter than the $500 check of George A. Brown to him was produced in evidence or testified to, so that the evidence was such that the jury might reasonably have inferred, under the circumstances, that Showalter in fact received the total of $15,000 for the property from Floyd E. Brown.

*Rudolph Bumgardner* and *Curry & Curry,* for the plaintiff in error.

*Kerr & Crosby* and *Jos. A. Glasgow,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court.

The issue in this case involves purely a question of fact, namely:

1. Was the sale of his farm by Showalter, mentioned in, the statement preceding this opinion, a *bona fide* sale

to George A. Brown; or was it merely a pretended sale to him, being in truth a sale from Showalter to Floyd E. Brown, cloaked and attempted to be disguised as a sale to George A. Brown with the purpose and intent on the part of Showalter to escape the fulfillment of his obligation to the plaintiff as a real estate agent to pay the latter the agreed $500 commissions on the sale to Floyd E. Brown or other purchaser procured by the plaintiff?

[1] In our consideration of this question we recognize that the defendant in error, Showalter, is entitled to the presumption of fair dealing and that the proof in the case must be "clearly and satisfactorily" sufficient to overturn that presumption in order to entitle the plaintiff to a recovery against him. Mere suspicious circumstances would not be enough to warrant such a recovery in such a case. *Va. F. & M. Ins. Co.* v. *Hogue,* 105 Va. 361, 54 S. E. 8.

[2-4] Due weight must also be given to the action of the learned judge of the trial court in setting aside the verdict of the jury in favor of the plaintiff, as set forth in the statement of the case above. It was the duty of the trial judge to set the verdict aside if it was "plainly against the evidence or without evidence to sustain it," as the rule is stated in *Noell* v. *Noell,* 93 Va. 439, 25 S. E. 242. Or, as stated in *Muse* v. *Stern,* 82 Va. 33, 35, (3 Am. St. Rep. 77), this court will sustain the verdict, although it be set aside by the trial judge, "unless it can perceive that there has been a plain deviation from right and justice and that the jury has found a verdict against the law, or against evidence, or without evidence.

There is no controversy over the law of the case before us. The question presented to us for decision by the record, therefore, is the following:

2. Was the verdict of the jury in favor of the plaintiff

against Showalter, for the $500 damages, as set forth in the statement above, plainly against the evidence or without evidence to sustain it?

[5]   The crucial question in the case is whether at the time of the verbal communication between Showalter and George A. Brown concerning the sale of the farm by the former to the latter there was in truth a *bona `fide* contract of sale from the former to the latter or only a talk which did not ripen into a contract until after George A. Brown had ascertained that Floyd E. Brown would still pay $15,000 for the farm and after Showalter also knew this and that Floyd E. Brown, the plaintiff's customer, was in truth the purchaser of the property and was to be made use of in the transaction.   If this was true, then, in view of the unsuccessful effort of both George A. Brown and Floyd E. Brown by their testimony to create on the minds of the jury a different impression, and in view of the preceding abortive effort of Showalter and Floyd E. Brown to put through a pretended sale in very much the same way with the intermediation of Newt. Brown playing a very similar part as that charged by the plaintiff upon George A. Brown, showing the very recent existence of the *animus* of Showalter in the premises, there was ample evidence before the jury furnished by the testimony of George A. Brown himself and of Floyd E. Brown, (which is indicated in the statement preceding this opinion) to sustain the jury in concluding that the sale to George A. Brown was not a *bona fide* sale, but was merely a pretended. sale and that the sale was in truth one from Showalter to Floyd E. Brown, as set forth in the question in this opinion first above stated.   And to sustain the jury in finding that there was no contract of sale between Showalter and George A. Brown until both of them knew that they could make use of the plain-

tiff's customer as aforesaid, the testimony of George A. Brown and his manner of testifying was amply sufficient.

[6, 7] The fact that the jury brought in no verdict against George A. Brown does not at all indicate to our minds that they acquitted him of all complicity in the pretended sale aforesaid, for, as is well settled, and is, of course, well understood, the law imposes no duty of contribution between joint tort feasors to the payment of damages occasioned by their joint tort. The right of recovery of a plaintiff in such case being several as well as joint, nothing is more common than for juries to fail to bring in a verdict against all the tort feasors sued, and that without any intention of wholly acquitting any of them of misconduct. Juries are often manifestly influenced to award the damages against that defendant found most at fault in, or who has gained most by the tort in question; and in other cases it is not apparent what may have influenced juries in awarding damages against one and none against another tort feasor sued. It would be a most unsatisfactory foundation upon which to rest the decision of the case before us to base it on the assumption that failure of the jury to award any damages against George A. Brown evidences that they acquitted him of all complicity in the deceit aforesaid of Showalter, and hence draw the conclusion that Showalter was not guilty of such deceit on the ground that he could not have accomplished it without the complicity of George A. Brown. That would be but reasoning in a circle and with the major premise predicated on an assumption which may not have been a fact.

For the reasons stated, we are of opinion to reverse the case and enter judgment for the plaintiff.

*Reversed.*