Syllabus.

## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## J. LEON WOOD AND J. W. COLE, PARTNERS, DOING BUSINESS AS J. LEON WOOD & CO., v. D. G. ARONBERG.

January 19, 1922.

Absent, Burks and Saunders, JJ.

1. BROKERS—*Action Against Brokers for Profits—Refusal of Brokers to Transfer Stock Bought by one Person to Another's Account—Case at Bar.*—I, having an account with a brokerage firm, ordered the brokers to buy two hundred shares of a certain stock upon margin. The stock was purchased in the name of I, and the brokers claimed that they had no notice of any one else having an interest in the transaction. Upon the brokers pressing I for additional margins, one A, who claimed that the two hundred shares had been bought for him by I, wrote the brokers enclosing a check for $2,000 and asking the brokers to transfer the two hundred shares to his account. This the brokers refused to do, but cashed the check and credited I's account with the proceeds.

   *Held:* That A, upon this refusal, unless he was the principal or partner of I, had the right to demand and recover the $2,000, but he had no right to lie in wait, keep silent when he should have spoken, and withhold his claim from the brokers until they had closed I's account, and thus reserve his freedom to determine whether he would demand the return of the $2,000 or claim the profits upon this particular stock.

2. SET-OFF, RECOUPMENT AND COUNTERCLAIM—*Verdict Not Allowing Counterclaim Construed to Determine the Question Against Defendants.*—In an action by a customer against brokers for profits alleged to have been made on stock bought on margin for the customer, the brokers filed a special plea of set-off, alleging that plaintiff and another party with whom they had an account were partners, and claiming of plaintiff the balance shown to be due them on this account.

   *Held:* That the verdict of the jury, having failed to allow this claim, must be construed to determine this contention against the brokers.

3. APPEAL AND ERROR—*New Trial—Verdict Set Aside by Lower Court Sustained in Appellate Court.*—The Supreme Court of Appeals will sustain a verdict, although it was set aside by the trial judge, unless it can perceive that there had been a plain deviation from right and justice, and that the jury have found a verdict against the law, or against the evidence.

4. APPEAL AND ERROR—*New Trial—Verdict Set Aside by Lower Court Sustained in Appellate Court—Action Against Brokers—Case at Bar.*—In the instant case, an action against brokers for profits on the purchase of stock on margin, there was a sharp conflict in the testimony, but according to the evidence introduced by the defendant one I bought the stock in his own name, paid the brokers thereon, and then undertook with the plaintiff, while he was largely indebted to the brokers, to transfer to plaintiff all of his rights in the most valuable stock for speculative purposes which he was carrying, without responding to the proper demand of the brokers for additional margin, and when the brokers refused to make the transfer, neither I nor plaintiff raised any further question as to the right of the brokers to make such refusal.

*Held:* That a verdict of the jury in favor of the brokers was not plainly wrong, and that the trial court erred in setting it aside.

Error to a judgment of the Circuit Court of the city of Norfolk in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*E. A. Bilisoly, Geo. S. Martin* and *R. W. Shultice,* for the plaintiffs in error.

*Williams, Loyall & Tunstall,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

[1] D. G. Aronberg instituted his motion for judgment against J. Leon Wood and J. W. Cole, partners doing business as J. Leon Wood & Co. There was a trial by jury and a verdict for the defendants; whereupon the plaintiff made

a motion to set aside the verdict upon the ground that it was contrary to the law and the evidence, which motion was sustained; thereupon the trial judge entered judgment in favor of the plaintiff against the defendants for the full amount claimed, $5,439.18, and they are here assigning error.

The pertinent facts out of which this controversy arises may be thus stated: One R. Palmer Ingram had been buying stocks upon margins through the defendants, who were stock brokers, for several months. On the 24th day of June, 1919, he bought through them 200 shares of stock of the American Sugar Refining Co. at 134 1-2. The margin required on this transaction was $2,000. Ingram gave the brokers his check for $1,500 instead of for the amount demanded, because, as he roughly figured up his account, he found that he had $500 or $600 to his credit over and above the sum necessary to margin various other stocks which he was then carrying with the defendants. The 200 shares of stock were purchased in his own name, and according to the testimony of the defendants nothing was said then, nor until a long time thereafter, about the plaintiff, Aronberg, and no intimation was then given that he had any interest in the transaction. Ingram's cancelled check for $1,500 now has on it a notation "for D. G. Aronberg," but the brokers testify that they believe that this was not put on the check until after it had been paid. Confirmation of the purchase was duly made to Ingram, showing that the stock had been bought for him. There was a subsequent check for $500 containing the same notation paid by Ingram to the brokers for additional margin on his account. Before this particular transaction, Ingram had bought fifty shares of this stock, and after it he also bought 100 shares of it in the same way on margin in his own name. On the 7th day of August, 1919, Ingram owed the brokers, Wood & Co., over $3,000 on account of margins due on purchases

of these and various other stocks. It appears from the plaintiff's testimony, though the defendants deny that they had any notice of this, that Aronberg, the plaintiff, who was absent from the city a great deal, had directed Ingram to buy 200 shares of this particular stock for him, and at the same time authorized Ingram to get the $2,000 which was necessary to pay the margin from his (Aronberg's) office. Aronberg, however, paid no attention to the fact that he had no confirmation of the sale from the brokers, or that the stock was being carried in Ingram's name as purchaser and owner. Between July 17 and August 7, 1919, the brokers were pressing Ingram for additional margins, and threatening to close out his account unless the additional funds were supplied. Ingram then owed the brokers more than $3,000 for margins then due on this and other stocks being carried for him, and on August 7, 1919, this letter was sent to the brokers by special messenger:

"Norfolk, Virginia, August 7, 1919.
"Messrs. J. Leon Wood & Co.,
        "City.
"Gentlemen:
   "Enclosed please find my check for $2,000 as additional margin to cover 200 shares of American Sugar, now held in the name of Robert P. Ingram, also kindly transfer same to my account.
                    Yours very truly,
                        "D. G. Aronberg."

Upon receipt of this check the brokers immediately had it certified and placed to the credit of Ingram's account. This letter was dictated by Ingram but signed by Aronberg. The brokers promptly and positively refused to transfer the 200 shares of stock because the amount was insufficient to margin the stocks then being carried for Ingram by them and replied to this letter on August 8th in this language:

9

"We have your favor of the 7th, enclosing check for $2,000 and have placed the same to the credit of the account of Mr. R. Palmer Ingram."

When the plaintiff and Ingram learned that the brokers declined to transfer the stock to Aronberg, Ingram wrote a letter, signing Aronberg's name to it, to the effect that in as much as they had not carried out the instructions, he had stopped payment of the check, but as the check had already been certified, this effort to stop its payment was unavailing. From that time to the close of the transactions there appears to have been no change in the relation of the parties. Both plaintiff and Ingram then knew that the $2,000 had been placed to the credit of Ingram's account, and that the defendants refused to transfer the 200 shares of sugar to Aronberg because of Ingram's failure to pay the additional margins required. The brokers continued their demand on Ingram for additional margins, and on September 23, 1919, notified him by letter that unless he deposited at least $3,000 by Thursday, September 25, they would close out his account at the prevailing prices, and also advised him that he was then carrying with them fifty shares of Pierce Oil, 200 shares of American Sugar Refining Co., and 100 shares of Silver King of Arizona. The letter further states that "Unless this matter is attended to by eleven o'clock on the morning of Thursday, September 25th, we will sell these securities at the market the best we can get at that time." On September 25, according to the testimony of the brokers, Ingram told them to close out all of these stocks, and thereupon, on that date, they were sold, and after crediting the proceeds of sale the account showed a balance of $478.50 due to the brokers.

Thereafter, on the 30th day of September, Aronberg and Ingram went to the office of the defendants, after they both knew that the stock had been sold, and Aronberg de-

manded his money, asking for $4,000, or as he expressed it, "very particularly, where is the $2,000 check I sent you. I have an account or I didn't have an account. If I did have an account and you accepted my check my account is still in force and I will tell you when to sell the sugar." But the brokers declined to respond to his demand. Then on October 2, 1919, Aronberg wrote the brokers this letter:

"Referring to my letter of August 7, 1919, in which I enclosed my check for $2,000, as additional margin to cover 200 shares of American sugar stock, then held in the name of Robert P. Ingram, with instructions for the transfer of this stock to my name, I now instruct you to sell the same at the market price and ask that you kindly let me have remittance to cover this transaction."

To this letter no reply was made, and this litigation ensued. The judgment of the trial court is based upon the view that the plaintiff was entitled to recover as the original purchaser of the 200 shares of stock at 134 1-2 and to receive the profit which would have been his if the whole transaction had been in his name as purchaser from the beginning, and terminated by a sale of the stock as his property by his direction at the prevailing price on October 2, 1919, the date of this letter—that is, at 142. Thus calculated, his profits would correspond with the judgment of the court.

The solution of the controversy depends upon whether or not, under these circumstances, the court erred in setting aside the verdict of the jury which was in favor of the defendants. In this connection it should be observed that the letter of August 7, enclosing the $2,000 check of Aronberg was not accompanied by any order from Ingram directing the brokers to transfer the stock to Aronberg, nor does the letter disclose upon what terms and conditions the stock

was to be transferred from Ingram's account and its ownership changed. It seems clear from Aronberg's claim in this proceeding that he then intended that it should be transferred to him with a credit of $4,000 and charged at the original purchase price of $134.50 per share, because had he intended it as a new transaction as of that date, he could have bought it then as a new transaction at $127 per share upon a margin of $2,000. If his view is to prevail here, and he is to be held to be the original purchaser of the stock as of June 24, the effect of accepting his construction is to take away $400 or $500 of margin or credit which, if the evidence of the brokers is true, belonged to Ingram, that being the amount then to his credit on that particular 200 shares of stock if segregated from all of his other transactions. It may be assumed from Ingram's action that he was willing, indeed anxious, to have the transfer made, though it does not appear even from his own testimony upon what terms he desired the stock to be transferred to Aronberg, and certainly he had no right to insist upon the transfer under the circumstances detailed until he had supplied the funds necessary to margin his account.

On the 8th of August, 1919, both Aronberg and Ingram ascertained definitely from the brokers that the transfer would not be made until the account was properly margined.

The inferences to be drawn from these facts and circumstances and the consequential legal rights of the parties are difficult to determine. It is observed, however, that Aronberg, the plaintiff, took no other action and made no other protest whatever; indeed, he is not heard from in connection with the matter from that date, August 8, until September 30, after the brokers had, with Ingram's knowledge, sold the stock as his property and for his credit. Clearly, unless he was a partner of Ingram, or his principal, in all of Ingram's transactions (of which there is some suggestion in

the testimony), Aronberg, when he learned that the brokers refused to make the transfer which he desired, had the right to demand and recover the $2,000 which he paid them. He made no such demand, however, until September 30, after he knew that the account had been closed. It may be that the jury inferred from this, either that he accepted the brokers' construction of his letter of August 8, or else that he waived his rights in the hope that the stock market would so improve that the transaction would nevertheless prove profitable to him. He certainly had no right to lie in wait, keep silent when he should have spoken, and withhold his claim from the brokers until they had closed Ingram's account, and thus reserve his freedom to determine whether he would demand the return of the $2,000 or claim the profits upon this particular stock, and this without assuming any responsibility whatever for the losses which might arise from the transaction.

[2] The defendants filed a special plea of set-off, alleging that Aronberg and Ingram were partners, and hence they claimed of Aronberg the balance shown to be due them on the Ingram account of $478.50. The verdict of the jury having failed to allow this claim, must be construed to determine this contention against the brokers. Although this is a necessary inference from the verdict, it is also a fair inference therefrom that they concluded from all of the circumstances of the case that Aronberg was speculating either in the stock here immediately involved, or in all of the other stocks held in Ingram's name, as an undisclosed principal, with the intent to take the profits arising therefrom without assuming responsibility for any of the losses.

[3, 4] Upon the whole testimony, we must determine whether or not it was sufficient to support the verdict of the jury in favor of the brokers, for, if it was, the court erred in setting it aside.

The rule upon this subject has been recently stated in

*Palmer* v. *Showalter,* 126 Va. 306, 332, 101 S. E. 136, thus: This court "will sustain a verdict, although it was set aside by the trial judge, unless it can be perceived that there has been a plain deviation from right and justice, and that the jury have found a verdict against the law, or against the evidence."

The conclusion from typical Virginia cases, to which many others could be added is thus expressed in *Forbes & Co.* v. *Southern Cotton Oil Co.,* 130 Va. 245, 108 S. E. 15: "They manifest the great respect that is accorded the verdict of a jury fairly rendered. It is not sufficient that the judge, if on the jury, would have rendered a different verdict. It is not sufficient that there is a great preponderance of the evidence against it. If there is conflict of testimony on a material point, or if reasonably fair-minded men may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony, in all such cases the verdict of the jury is final and conclusive and cannot be disturbed either by the trial court or by this court, or if improperly set aside by the trial court, it will be reinstated by this court. But with all the respect that is justly due to the verdict of a jury, and which is freely accorded to it, if there has been 'a plain deviation from right and justice' even a court of law will not make itself a party to such a wrong by entering up judgment on it. The initial step of the trial court, that of setting aside the verdict, can only be taken either where there is no evidence at all to support the verdict, or else the verdict is plainly contrary to the evidence and does not come within the rule above stated." *Blair & Hoge* v. *Wilson,* 28 Gratt. (69 Va.) 166; *Morien* v. *Norfolk & Atlantic Terminal Co.,* 102 Va. 622, 46 S. E. 907; *Jackson* v. *Wickham,* 112 Va. 128, 70 S. E. 539; *Bashford* v. *Rosenbaum Hardware Co.,* 120 Va. 1, 90 S. E. 625.

Applying this strict rule to the case here, we have a

transaction about which there is a very sharp conflict in the testimony, but according to the evidence introduced by the defendants Ingram bought the stock in his own name, paid the necessary margin with his own money, as well as additional margins thereon from time to time thereafter, and then undertook with the plaintiff, while he was largely indebted to the brokers, to transfer all of his rights in the most valuable stock for speculative purposes which he was carrying, without responding to the proper demand of the brokers for additional margin, and that when the brokers refused to accede to his demand to make the transfer as to which he gave no definite directions, neither he nor Aronberg then raised any further question as to the right of the brokers to refuse to respond to their request. Aronberg was then silent, while Ingram assented to the sale of the stock, the legal title to which was clearly in him, and only after the transaction had been closed and the brokers had taken their loss did Aronberg again appear as a claimant. Under these circumstances, we are of opinion that the verdict of the jury in favor of the brokers is not plainly wrong, and that whatever fair difference of opinion there may be as to the correctness of their conclusion, the case presents a question which under our system was properly referred to the jury, and their verdict is conclusive.

For the reasons indicated, we are of opinion that the trial court erred in setting aside the verdict, and this court will, therefore, reverse the judgment in favor of the plaintiff and enter judgment in favor of the defendants upon the verdict of the jury so improperly set aside.

*Reversed.*