## Richmond.

### COSBY DOSWELL v. C. C. H. THOMPSON.

October 1, 1925.

Absent, Christian, J.

1. BROKERS—*Real Estate Brokers—Action for Commissions—Good Faith of Brokers—Case at Bar.*—In the instant case, an action by plaintiff for commissions for finding a purchaser for real estate of the defendant, defendant claimed that the plaintiff had deceived him and failed to disclose the facts in connection with the sale, and thereby worked a fraud upon defendant. Plaintiff, on the other hand, claimed that after negotiating with the purchaser, he had a personal interview with the defendant and told him of the entire transaction, and that defendant had promised to have the deed drawn at once. There was sharp conflict in the evidence and both the theory of the plaintiff and that of the defendant was submitted to the jury by appropriate instructions, and the law of the case was construed as favorably to defendant's contention as he had a right to demand, and a verdict in favor of plaintiff was conclusive on the question of plaintiff's good faith.

2. BROKERS—*Real Estate Brokers—Action for Commissions—Good Faith of Brokers—Case at Bar.*—In the instant case, an action for commissions by plaintiff against defendant for sale of defendant's real property, in every statement made by defendant he emphasized the fact that $10,000.00 cash for the property was his objective. This being true it was but natural that defendant should agree with plaintiff that all over $10,000.00 should go to plaintiff. It might be argued, therefore, that defendant was not concerned with the price for which the property was sold, provided plaintiff secured him the $10,000.00, but in view of the conclusion reached by the jury by their verdict for plaintiff, on the controverted fact that plaintiff submitted to defendant the offer for the property and told him that the purchasers were willing to pay $12,200.00 cash, and that defendant accepted the purchasers at that price, this question becomes immaterial.

3. NEW TRIAL—*Verdict Set Aside by Trial Court—Reversal in Appellate Court.*—The Supreme Court of Appeals will sustain a verdict although it was set aside by the trial judge unless it can perceive that there

has been a plain deviation from right and justice, and that the jury have found a verdict against the law, or against the evidence.

4. New Trial—*Verdict Set Aside by the Trial Court—Evidence Sufficient to Sustain Verdict.*—If there was evidence before the jury of a character not physically impossible or inherently incredible which, if credited by the jury, was sufficient to sustain the verdict, it was reversible error in the trial court to set it aside.

5. Brokers—*Real Estate Brokers—Action for Commissions—Verdict for Plaintiff—Reduction of Verdict by Trial Court—Case at Bar.*—In the instant case, an action by plaintiff against defendant for commissions for sale of the defendant's real property, the jury found by their verdict that the plaintiff was entitled to recover, and that finding was abundantly supported by the evidence. The finding was based upon the theory that the plaintiff had complied with his contract, and had produced to the defendant a purchaser, ready, able and willing to purchase the land on the terms fixed by the defendant. This being so, the contract of employment fixed definitely the measure of plaintiff's recovery, to-wit, all in excess of $10,000.00 net to the defendant, or $2,200.00 with interest, therefore there was no evidence to support the judgment of the lower court setting aside a verdict for the plaintiff of $2,200.00, and entering judgment for the plaintiff in the sum of $1,000.00.

Error to a judgment of the Circuit Court of Nottoway county, in a proceeding by attachment. Judgment for plaintiff in amount less than verdict and plaintiff assigns error.

*Reversed.*

The opinion states the case.

*W. Moncure Cravatt* and *W. R. Jones,* for the plaintiff in error.

*H. H. Watson* and *T. Freeman Epes,* for the defendant in error.

McLemore, J., delivered the opinion of the court.

The principal actors in this litigation are C. C. H. Thompson and Cosby Doswell, both colored, and the

controversy grows out of a contract between those parties authorizing a sale by the plaintiff of a farm in Nottoway county containing 200 acres belonging to defendant Thompson, who at the time the petition for an attachment was filed was a nonresident of the State, the case being matured by order of publication.

On August 1, 1921, the sheriff of Nottoway county, by virtue of an attachment in his hands, levied on the real estate of the defendant known as the "Woodson tract" to satisfy the claim of plaintiffs amounting to $2,200.00 which was claimed to be due them as commissions for selling the farm to Hatchett, Inge and Gee for the sum of $12,200.00 cash, and judgment by default was entered on the attachment on December 14, 1921, for $1,500.00 which judgment was entered upon *ex parte* proof of plaintiff's claim.

This judgment was subsequently set aside as a result of Thompson's appearance by counsel and filing a petition under section 6411, Code of Virginia. After sundry pleadings had been filed, which are immaterial in dealing with the merits of the case, a trial was had before a jury on September 6, 1923, to determine what amount if any was due to Doswell for services rendered in selling or attempting to sell the farm of 200 acres.

The jury's verdict, returned September 7, 1923, was for $2,200.00, the amount claimed in the pleadings, which verdict the court set aside and entered judgment for the plaintiff in the sum of $1,000.00. To this judgment of the court both parties excepted, and the case is before us to determine the correctness of the court's action in this behalf.

The petition for a writ of error contains six assignments of error, but counsel in their arguments practically concede that assignments five and six contain the real questions with which we are concerned.

These assignments are as follows:

"V. The court erred in sustaining the motion of the defendant to set aside the verdict of the jury and in not overruling said motion and entering up judgment for the plaintiff for $2,200.00, with interest from February 14, 1920, in accord with the verdict of the jury.

"VI. The court erred in reducing the amount of the judgment of the plaintiff, Doswell, against the defendant, Thompson, from $2,200.00 and interest to the amount of $1,000.00 and interest from February 14, 1920."

The record shows Doswell to be an illiterate negro who had lived in Blackstone for twenty years or more, and up to this transaction had enjoyed a good reputation for truth and veracity.

That Thompson, a native of the West Indies, came to Nottoway county about 1910 as a public school teacher, later was colored farm demonstrator for Lunenburg and Nottoway counties, and at the time of the transaction under consideration was attending Meharry Medical College at Nashville, Tenn.

There is some sharp conflicts in the evidence of these principal actors, upon questions of vital moment to the case, and the different versions of what happened between them, especially in their interview at Nashville, were submitted to the jury by appropriate instructions. We refer to instruction No. 1, given at the instance of the plaintiff, and to 1 (b), 2 (b), 3 (b) and 4 (b) given at the suggestion of the defendant.

The instructions are as follows:

"1. The court instructs the jury that if they believe from the evidence that Cosby Doswell was authorized

to make sale of the Woodson tract of land for $10,000.00 cash and net to C. C. H. Thompson; that said Cosby Doswell was to receive for his commissions or compensation all over said $10,000.00 he could get cash for said tract of land; that he secured purchasers who were ready, willing and able to purchase said Woodson tract of land at $12,200.00 cash, and who offered to purchase it at $12,200.00 cash; that the said Cosby Doswell submitted to said C. C. H. Thompson on his visit to Nashville said offer and told him that the purchasers were willing to pay $12,200.00 cash for said Woodson tract of land, $10,000.00 thereof cash to said Thompson; and that the said Thompson accepted said purchasers at said price, and on said terms, and later refused to consummate the same, then the jury are instructed that the fact that said sale was not completed or consummated, is immaterial in this case, because the refusal of the said Thompson to consider the price of $12,200.00, $10,-000.00 thereof net to himself, prevented any further negotiation, and thereupon the plaintiff became entitled to his commissions, and the jury must find in favor of the plaintiff in the sum of $2,200.00, with interest thereon at six per cent from February 14, 1920.

"The foregoing instruction was granted at the request of the plaintiff and the defendant excepted.

"1 (b). If the jury believes from the evidence that the agreement between Thompson and Doswell was that Doswell might sell the property for $10,000.00 cash, and receive for his compensation all he could get over $10,000.00, or might sell for $12,000.00 on time, of which Thompson would receive $11,000.00 and Doswell $1,000.00; and that Doswell as a good agent looking out for the interest of his principal did sell the property for $12,500.00, and did conceal this

fact from his principal, and in order to deprive his principal of the benefit of this contract and secure for himself a greater compensation than $1,000.00, gave a discount of two and one-half per cent or thereabouts to the purchasers to pay all cash, the purchasers borrowing the money elsewhere at the legal rate of interest and at the same rate of interest as provided in the contract; and that Doswell did then report to his principal that he had made a cash sale, and requested his principal to convey the property for $10,000.00 to the purchasers, Doswell thereby hoping and expecting to retain the $2,200.00 received in excess of the cash price, the total price being $300.00 less than the actual sale price, such conduct constitutes a fraud by the agent on his principal, and you must find for the defendant.

"The foregoing instruction was granted at the request of the defendant and the plaintiff excepted.

"2 (b). If the jury believes from the evidence that the agreement between Thompson and Doswell was that. Doswell might sell the property for $10,000.00 cash and receive for his compensation all he could get over $10,000.00, or might sell for $12,000.00 on time, of which Thompson would receive $11,000.00 and Doswell $1,000.00 and that Doswell did make a sale at $12,500.00 on time, and did report such sale to Thompson with a copy of the contract, he had no right to vary such sale without the consent of Thompson, and if he agreed to vary such sale without the consent of Thompson, then his commissions would be limited to $1,000.00.

"The foregoing instruction was granted by the court and both the defendant and the plaintiff excepted.

"3 (b). If the jury believe from the evidence that the agreement between Thompson and Doswell was that Doswell might sell the property for $10,000.00

cash and receive as his compensation all he could get over $10,000.00, or might sell for $12,000.00 on time, of which Thompson would receive $11,000.00 and Doswell $1,000.00; and that Doswell did on January 5, 1920, sell the property for $12,500.00 on time, and did execute a contract of sale at that price, and did report that a sale had been made, but concealed from Thompson that such a contract had been signed by him, or what was the price agreed on; and that some weeks or days after such contract was made Doswell did agree to discount such price for cash, and did conceal from Thompson material facts relating thereto, said Doswell did not act in good faith with his principal, and you must find for the defendant.

"The foregoing instruction was granted at the request of the defendant and the plaintiff excepted.

"4 (b). The court instructs the jury that a broker or agent who undertakes to procure a purchaser of property placed with him for sale is required to act in good faith in presenting to his principal a purchaser, and it is his duty to place his principal in full possession of all the facts bearing upon his personal interest and relation to the subject and toward the prospective purchaser, and if they believe from the evidence that Cosby Doswell, acting as the agent of C. C. H. Thompson, sold the farm for $12,500.00, and reported to Thompson that he had sold it for $10,000.00, and never disclosed to Thompson that he had sold it for more than $10,000.00, then he failed in the discharge of his duty as an agent, and is not entitled to recover any commissions for the sale of this property.

"The foregoing instruction was granted at the request of the defendant and the plaintiff excepted."

It may be conceded that the law of the case was construed as favorably to the defendant's contention

as he had a right to demand, and brought to an issue the good faith of Doswell in his dealings with his principal, and whether or not he had fully disclosed the real contract between himself as the agent or broker for Thompson, and Hatchett, Inge & Gee, the purchasers of the farm.

Thompson, just before leaving Blackstone for Nashville, authorized Doswell to sell his farm of 200 acres, "for time $12,000.00 from one to ten years, and out of the $12,000.00 give me $11,000.00 and keep $1,000.00, and for cash I want $10,000.00 and all you can get over that you can have; I want $10,000.00 net to me." This statement of the agreement as made by Cosby Doswell is not denied by Thompson. Doswell was unable to effect a sale with the clients to whom Thompson had directed him the day he left the State in November, 1919, but on January 4, 1920, having gotten in touch with other prospective purchasers, he wired Thompson as follows: "What is the best you will do on the 200 acres of land for cash, think I have it sold. Answer at once."

On January 5th he received from Thompson the following: "Two hundred acres for cash ten thousand, time twelve thousand dollars." On the same day Doswell wrote Thompson a letter saying:

"Jan. 5, 1920.

"Mr. Thompson

"Dear Sir    I close the sale on your place to da We have not deside wheather cash or tearms    I will inform you

"Later send me your Dead so that I can have the papers drawn up. All so the byers is requiring abstract you ma epect deed to sind in a few day if it is sold on

time the tearm is 1-3 c from 1 to 6 years 6 per cent from date of sail nothing cut or remove from the place untell the peachers price is paid   Inclose your dead at once hoping you much suc & a Happy New Year

"Cosby Doswell.

"Blackston, Va."

The contract for the sale of the property was first made for $12,500.00, ⅓ cash upon execution of deed, remainder in 1, 2, 3, 4, 5, and 6 years, etc. In a short while thereafter, the purchasers agreed to pay cash if $300.00 were deducted from the purchase price, and this Doswell agreed to do, and advised Thompson that he had sold for cash, and to forward deed for the property at once.

The execution of the deed being unduly delayed, Doswell went to Nashville and had a personal interview with Thompson, at which time he testifies he told him of the entire transaction, and that he was to get $2,200.00 for his services after paying Thompson the $10,000.00 cash for which he had authorized the property to be sold; that Thompson then promised to have the deed drawn at once, and stated: "All I was looking for was $10,000.00 coming to me."

[1] This phase of the testimony as well as that of Thompson's to the effect that Doswell had deceived him, and failed to disclose the facts in connection with the sale, and thereby worked a fraud upon his principal were fairly and fully submitted to the jury. Their verdict plainly declares their belief in the plaintiff's version of the case, and of his statement of what happened in the conference between the parties in Nashville.

[2] In every statement made by Thompson he

emphasized the fact that $10,000.00 cash was his objective. This being true it is but natural that he should agree with Doswell that all over $10,000.00 should go to him. No provision for compensation to Doswell is made in the event of a cash sale save and except such as he may demand of the purchaser. It may be argued therefore with considerable force that Thompson was not concerned with the price for which the property was sold, provided Doswell secured for him the $10,000.00 (see *Wilson* v. *Brown*, 136 Va. 634, 118 S. E. 88), but in view of the conclusions reached by the jury on the controverted facts, after their attention was directed by the learned trial judge in the instructions to the turning point in the case, namely:

"That the said Crosby Doswell submitted to said C. C. H. Thompson on his visit to Nashville said offer and told him that the purchasers were willing to pay $12,200.00 cash for said Woodson tract of land, $10,-000.00 thereof cash to said Thompson; and that the said Thompson accepted said purchasers at said price, and on said terms, etc."

By their verdict the jury has said they believed these facts to have been established, and their findings seem to us to conclude the case against the defendant.

We are therefore of the opinion that the trial court erred in setting aside the verdict of the jury, and having reached this conclusion, it necessarily follows that it was error to enter judgment in favor of the plaintiff for $1,000.00.

As was said in *Palmer* v. *Showalter*, 126 Va. 306, 101 S. E. 136:

[3] "This court will sustain a verdict although it was set aside by the trial judge unless it can perceive that there has been a plain deviation from right and justice, and that the jury have found a verdict against the law,

or against the evidence." See also *Wood* v. *Aronberg*, 132 Va. 126, 110 S. E. 351.

[4] The rule upon this subject is of course well understood. If there was evidence before the jury of a character not physically impossible or inherently incredible which, if credited by the jury, was sufficient to sustain the verdict, it was reversible error in the trial court to set it aside." *Terry* v. *Bishop-Fry Co.*, 133 Va. 332, 338, 112 S. E. 621.

A careful reading of the record in this case produces the impression that the plaintiff is morally as well as legally entitled to the verdict which the jury gave him. The unwillingness of the defendant to deliver the deed seems to have had its origin in the discovery that Doswell had found a purchaser ready, willing and able to pay for the property a sum which left for Doswell as his compensation an amount greater than he, Thompson, had ever dreamed was possible, and greater than he was willing to yield Doswell, even though in keeping with the agreement that he should have all over $10,000.00 cash.

[5] The case of *Wilson* v. *Brown*, 136 Va. 634, 118 S. E. 88, is so strikingly similar to the one under consideration that we quote from Judge Burks' opinion:

"The jury have found by their verdict that the plaintiff is entitled to recover, and, as we have seen, that finding is abundantly supported by the evidence and cannot be disturbed by this court. That finding is based upon the theory that the plaintiff had complied with his contract, and had produced to the defendant a purchaser ready, able and willing to purchase the land on the terms fixed by the owners. If so, then the contract of employment fixed definitely the measure of plaintiff's recovery, to-wit, all in excess of $8,000.00 net to the owners, or, in this case, $2,000.00 *  *  *

There is no evidence to support a finding of only $1,000.00.''

The judgment of the court will be set aside, and a judgment entered in favor of the plaintiff for $2,200.00, with interest from February 14, 1920.

*Reversed.*