# Richmond.

ALANTON CORPORATION v. MYERS CORPORATION OF NORFOLK.

September 27, 1928.

The opinion states the case.

*Willcox, Cooke & Willcox*, for the plaintiff in error.

*Rixey & Rixey*, for the defendant in error.

CHINN, J., delivered the opinion of the court.

This is an action to recover broker's commissions alleged to be due on account of a real estate transaction. In the court below Myers Corporation of Norfolk was the plaintiff, and Alanton Corporation the defendant, and the parties will be herein designated accordingly.

The plaintiff was engaged in the business of real estate agent and broker, and employed as saleman one Dal Garrison. The defendant was the owner of a tract of land containing approximately eighty-five acres located in Princess Anne county, near Virginia Beach, and in the transaction referred to was represented by its secretary and treasurer, F. W. McCullough.

One, Lee Umberger, of Wytheville, Virginia, being interested in the purchase of property in the vicinity of Virginia Beach, addressed a letter to the plaintiff making inquiries. After some correspondence Umberger came to Norfolk, and the plaintiff instructed Mr. Garrison, its saleman, to take him out and show him some property. The defendant had not listed its property for sale with the plaintiff, and at that time there were no contractural relations between them; but Garrison knew about defendant's property, and, dur-

ing the last week in February, 1926, he took Umberger to Mr. McCullough's home, introduced him to McCullough, and asked McCullough to show the property to Umberger. McCullough willingly did so, and after looking it over, Umberger asked him for the price and terms. McCullough informed him the price was $85,-000.00; payable $25,000.00 cash, and the balance in installments secured by a deed of trust on the property. Garrison and Umberger returned the following day and again on Sunday, February 28th, meeting Mr. McCullough on the property on both occasions. On the latter occasion Umberger asked McCullough if he would accept $5,000.00 cash, and give him sixty days to convert certain securities, and pay the balance of the cash payment. McCullough agreed to this, and Garrison, Umberger and McCullough went to the latter's house, where McCullough drew up a temporary contract of sale, which he and Umberger signed, and Umberger wrote a check for $5,000.00 payable to McCullough. It was understood that Umberger was to return home that night, and that Garrison and McCullough were to meet in the office of the plaintiff the following morning for the purpose of drawing up a formal contract, and Umberger delivered the check to Garrison to be held until that was done. McCullough and Garrison met at plaintiff's office the next morning as agreed, when, after some discussion, another contract was drawn up by McCullough and Mr. Baldwin Myers, of the Myers Corporation, which was then and there signed by Mr. McCullough in behalf of the defendant, and Umberger's check turned over to him. Umberger returned to Norfolk and signed this contract about ten days later. The only provisions of the contract which may in any way be deemed pertinent, read as follows:

"Norfolk, Virginia, March 1, 1926.
"Alanton Corporation, through its secretary and treasurer, F. W. McCullough, has this day sold, and Mr. Lee Umberger, of Wytheville, Virginia, has this day purchased, the tract of land" (describing it) "for the sum of eighty-five thousand dollars ($85,000.00); the sum of twenty-five thousand dollars ($25,000.00) to be paid in cash and the remainder of sixty thousand dollars ($60,000.00) to be evidenced by four (4) notes of fifteen thousand dollars ($15,000.00) each, payable respectively one (1), two (2), three (3), and four (4) years after date, * * * * with interest at six per cent (6%) payable semi-annually, and said notes to be secured by a deed of trust on the property.

"Mr. Lee Umberger is to have sixty (60) days in which to examine the title and make payment of the sum of twenty thousand dollars ($20,000.00), being the remainder of the cash payment of twenty-five thousand dollars ($25,000.00), five thousand dollars ($5,000.00) of which has this day been paid, and the receipt thereof is hereby acknowledged.

* * * * * * * *

"Alanton Corporation agrees to pay to the Myers Corporation of Norfolk, the agents making this sale, the regular five per cent (5%) commission at the time the cash payment is made, on April 30, 1926."

A few days before the $20,000.00 under the above contract was due, Umberger asked for an extension of thirty days in which to make payment, which McCullough for certain reasons refused. Umberger failed to meet the $20,000.00 payment on April 30, 1926, giving as his reason therefor his inability to raise the money. Some time during the following August, plaintiff made demand on the defendant for $4,250.00, claiming the same to be due as the five per cent com-

mission provided for in the above contract, and, upon defendant's denial of liability, instituted this suit to recover the amount. Upon the trial of the case the jury rendered a verdict for the defendant, which at the motion of the plaintiff the court set aside on the ground that it was contrary to the law and the evidence and without evidence to support it, and entered final judgment for the plaintiff for the entire amount of the claim sued for. This action of the court is the only error assigned.

It is urged on behalf of the defendant that the plaintiff is not entitled to recover the commission claimed for the reason that Umberger failed to consummate the contract of sale in accordance with its terms, without the fault or wrongdoing of the defendant, and the plaintiff did not, therefore comply with the general rule that the broker must produce a purchaser ready, willing and able to buy before he can claim commissions. On the other hand, it is contended by the plaintiff that Umberger was accepted as a satisfactory purchaser, and an enforceable contract made with him by the defendant, without being induced to do so by any representations of the plaintiff as to Umberger's responsibility; and, such being the case, the defendant is estopped from refusing to pay the commissions because of Umberger's financial inability to perform the contract.

██ The general rules of law applicable to the foregoing propositions have been frequently laid down by the courts in those cases in which the question has been whether the broker had earned his commissions, under an express or implied contract therefor between the broker and the property owner; but these rules have no application and cannot be invoked where there is no such contract, and it is, therefore, unnecessary to dis-

cuss them. In the case now under consideration the defendant had not placed the property in the plaintiff's hands for sale, there was no contract of employment, and, prior to the sale of the property to Umberger by McCullough, no agreement between the parties relative to commissions, either express or implied. The part that plaintiff took, through Mr. Garrison, in bringing about the sale was that of a mere volunteer. It is well settled that a real estate broker can only recover commissions by virtue of a contract with the owner, and that a mere volunteer cannot recover commissions simply because he introduced the customer who finally bought from the owner. *Leicht-Benson Corp.* v. *Stone & Co.*, 138 Va. 511, 121 S. E. 883, 43 A. L. R. 1100.

There being no contract between the parties themselves in this case upon which the plaintiff can base a valid claim for commissions, the question is not whether the plaintiff has earned the commissions sued for under such a contract, but whether it has a right to recover by virtue of the final clause of the contract of March 1, 1926, between the defendant (Alanton Corporation) and Umberger, the purchaser, whereby the defendant voluntarily agreed to pay to the plaintiff (Myers Corporation) five per cent commission on the sale "at the time the cash payment is made, April 30, 1926."

The meaning and intent of this provision of the contract is controverted, and upon its proper interpretation depends the determination of the whole case. The question in dispute is whether the payment of the commission was intended to be contingent upon the payment by Umberger of the $20,000.00 due on April 30th, as contended by the defendant, or whether the language employed was only intended to fix the time for the payment of the commission, as insisted by the

plaintiff. Looking at the language of this clause in the contract alone, its meaning is by no means clear, and may possibly be considered susceptible of the construction which the plaintiff attempts to put upon it, but when it is viewed in connection with the other provisions of the contract, the obvious design of the parties, and the surrounding facts and circumstances, we think it clearly appears that the parties intended and understood that the commission in question was to be paid out of the $20,000.00 cash payment when made by Umberger, and was contingent upon that event.

As far as the evidence discloses, the subject of commissions was not mentioned by either Mr. McCullough or Mr. Garrison until McCullough and Umberger had agreed on terms, and they went to McCullough's house on February 28th to reduce the agreement to writing. The matter was then brought up by Garrison and, according to the uncontradicted evidence, McCullough verbally agreed to pay Garrison a commission of five per cent "when the total cash payment of $25,000.00 was completed." It also appears that when the parties met in plaintiff's office the next morning to make the final draft of the contract, Garrison again referred to commissions. The evidence of Mr. McCullough, the only witness who testified as to what occurred on that occasion, which is also undisputed, is as follows: "When we had about concluded this contract Mr. Garrison stated: 'Mr. McCullough, we had a gentleman's agreement yesterday. Out of this twenty thousand dollars you were to pay me five per cent. I am working for the Myers Corporation.' I said: 'That is perfectly agreeable to me.' Mr. Baldwin Myers and Mr. Barton Myers were sitting there, and they nodded to each other, and walked out of the office, and dictated the *consideration* (?) which I never saw."

In addition to this evidence as to the express understanding of the parties at the time the contract was written, their subsequent conduct also tends to show that the words "at the time the cash payment is made," as used in the last clause of the contract, were not intended to fix the time for the payment of the commissions, regardless of whether Umberger made said cash payment on April 30th or not, but were intended to refer to the happening of that event, and made the commissions contingent upon it.

It appears that when Umberger asked for an extension of time to raise the money due under the contract on April 30th, he was told by Mr. McCullough that the extension could not be granted without the plaintiff's consent.  Umberger thereupon informed the plaintiff in regard to the situation, and plaintiff, under date of April 28th, wrote McCullough's attorney as follows:

"Dear Sir:

"In the matter of the settlement with Mr. Umberger for the property purchased from Mr. McCullough, Mr. Umberger tells us he desires to have a thirty day extension on the date of settlement, this is satisfactory to us if it is to Mr. McCullough.

"Very truly yours,
"MYERS CORPORATION OF NORFOLK,
"R. Baldwin Myers,
"President."

The only reasonable interpretation that can be put upon this action of the parties is that both of them understood at the time the contract was signed, that the plaintiff had an interest in the $20,000.00 Umberger was to pay on April 30th.  If the plaintiff had no interest in the money, and the language in question was only intended to fix the date the commissions were to be paid, it would have been a matter of no concern

to the plaintiff when the $20,000.00 was paid, or whether it was paid at all.

For the foregoing reasons, we are of the opinion that the verdict rendered by the jury is supported by the law and the evidence, and the learned judge of the trial court erred in setting the same aside and judgment for the plaintiff. Judgment will, therefore, be entered here for the defendant in accordance with said verdict.

■ "This court will sustain a verdict although it was set aside by the trial judge unless it can perceive that there has been a plain deviation from right and justice, and that the jury have found a verdict against the law, or against the evidence." *Doswell* v. *Thompson*, 143 Va. 777, 129 S. E. 684; *Wood* v. *Aronberg*, 132 Va. 126, 110 S. E. 351; *Palmer* v. *Showalter*, 126 Va. 306, 101 S. E. 136.

*Judgment reversed.*